# SUPPLEMENT.

OPINION OF THE JUSTICES TO THE HOUSE OF REPRESENTA-
TIVES.

By the third article of amendment of the Constitution of the Commonwealth, the dis-
qualification of pauperism is not required to have ceased to exist for any definite
period of time, in order to entitle a man actually free from such disqualification,
and otherwise qualified, to exercise the right of suffrage.

THE following order was passed by the House of Representa-
tives on April 1, 1878, and on April 4, transmitted by the
Speaker to the Justices of the Supreme Judicial Court, who, on
April 8, returned the answer which is subjoined.

Ordered, that the opinion of the Justices of the Supreme Ju-
dicial Court be required upon the following questions of law;
viz.:

First. What is the meaning of Article Third of the Amend-
ments to the State Constitution in relation to the exercise of the
right of suffrage by persons who have been paupers at any time?

Second. Does the State Constitution require any period of pro-
bation or residence, after a person has ceased to be a pauper,
before he can exercise a right of suffrage?

The Justices of the Supreme Judicial Court, having considered
the questions proposed in the order of the Honorable House of
Representatives of the first day of the present month, respect-
fully submit the following opinion:

The third article of amendment of the Constitution of the
Commonwealth provides that " every male citizen of twenty-one
years of age and upwards (excepting paupers and persons under
guardianship) who shall have resided within the Commonwealth
one year, and within the town or district, in which he may claim
a right to vote, six calendar months next preceding any election
of Governor, Lieutenant-governor, senators or representatives,'

and who either shall have paid a state or county tax assessed upon him within two years next preceding, or shall be by law exempted from taxation, shall have a right to vote at such election.

The meaning of the word "paupers" in this article was defined, in an opinion given to the Honorable Senate in 1832, to be persons receiving aid and assistance from the public, for themselves or their families, under the provisions made by law for the support and maintenance of the poor. 11 Pick. 538, 540. And it has been decided that a man who has been supported by his town as a pauper, but is able to earn more than enough to support himself and has found an employer, and is therefore not actually chargeable to the town and stands in no need of immediate relief, is no longer a pauper. *Wilson* v. *Brooks*, 14 Pick. 341.

We do not understand the order now before us as calling for any particular consideration of what constitutes a pauper, or how the fact of ceasing to be a pauper may be ascertained; but that the whole scope of the inquiry is, whether a person who is admitted to have been, and to have ceased to be, a pauper, must have ceased to be such for any definite period of time before he can exercise the right of suffrage. We are of opinion that he need not.

The only qualifications, which are required by the amendment of the Constitution to have existed for a certain time, are those of residence within the Commonwealth and within the town or district — in the one for a year, and in the other for six months. The provisions of the original Constitution, which required a property qualification, and for which the provision as to paupers and persons under guardianship has been substituted, were held to be satisfied by a voter's receiving in good faith the requisite amount of property on the morning of the day of election. *Bridge* v. *Lincoln*, 14 Mass. 367. In the article of amendment, the restriction as to paupers and persons under guardianship is not coupled with the provision as to residence, but is inserted by way of exception to the leading clause which secures the right of suffrage to adult male citizens. It is no more required that the voter shall have ceased to be a pauper, or under guardianship, a year or six months before the election, than that he shall have

been a citizen, or of age, during a like period. It has never been doubted that minors, having the other requisite qualifications, become qualified to vote immediately upon arriving at full age. *Humphrey* v. *Kingman*, 5 Met. 162, 165. And by uniform usage, recognized and approved in an opinion given to the Honorable House last year, persons otherwise qualified, who have been naturalized at any time before the election, have been deemed entitled to vote. 122 Mass. 594, 598.

The necessary conclusion appears to us to be, that, by the third article of amendment of the Constitution of the Commonwealth, the disqualification of pauperism or guardianship, like that of alienage or nonage, is not required to have ceased to exist for any definite period of time, in order to entitle a man actually free from every such disqualification, and duly qualified in point of residence and of payment of taxes, to exercise the right of suffrage.

> HORACE GRAY.
> JAMES D. COLT.
> SETH AMES.
> MARCUS MORTON.
> WILLIAM C. ENDICOTT.
> OTIS P. LORD.
> AUGUSTUS L. SOULE.

Boston, April 8, 1878.

——

THE Honorable GEORGE TYLER BIGELOW, a justice of this court from the twenty-first day of November, 1850, to the seventh day of September, 1860, and from that time until the thirty-first day of December, 1867, the Chief Justice thereof, died at his residence in Boston, on the twelfth day of April, 1878. A meeting of the members of the bar of Suffolk County was held in Boston on the eighteenth day of April, at which resolutions were passed, which were presented by the Attorney General to the full court on the third day of May. Before presenting them the Attorney General addressed the court as follows :

May it please your Honors, — We have assembled this morning by your kind permission to present to your honors and place