## Landis' Estate.  No. 1

*S. Richard Harr* and *Louis May*, for exceptants.
*John A. Coyle*, contra.

APPEL, P. J., January 10, 1935.—Elmina C. Landis died intestate on September 2, 1932, leaving to survive her a son, Samuel M. Landis, sole heir. For many years, from February 2, 1923, up to the day of her death, decedent was an inmate of the Lancaster County Hospital, duly committed to that institution as a weak-minded person.

The account of the Farmers Trust Company of Lancaster, her guardian, was filed in the court of common pleas on September 17, 1932, showing a balance of $4,-347.22. After the death of decedent this balance was paid to Samuel M. Landis, administrator, who filed his account May 18, 1934, showing a balance of $4,006.21. This account was called for audit on June 21, 1934, and was finally closed on July 2, 1934.

At the audit the Lancaster County Hospital presented a claim for maintenance from February 2, 1923, to September 2, 1932, the day of decedent's death, for $1,998.85, being at the rate of $4 per week. At the same time the Commonwealth of Pennsylvania presented a claim for maintenance of decedent for the same period for $1,-

000.29, being at the rate of $2 per week. There is no dispute as to the correctness of these bills, and it is agreed that nothing was ever paid on account of either of these claims. In a note on the administrator's account it is stated that the balance for distribution is in the Farmers Trust Company in a restricted checking account. This company, under the provisions of the Act of May 4, 1933, P. L. 271, was reorganized under the name of the Farmers Bank and Trust Company of Lancaster, a new corporation. This liquidation and reorganization are still in process and have not been completed. The balance in the restricted account is $4,147.21 which includes the aforesaid sum of $4,006.21, together with $141 accountant's commission credited in the account but not paid. In the process of liquidation and since filing the account the administrator has received on account of the restricted checking account the following: Cash in checking account, $1,753.61; 16 shares of stock of the new reorganized bank and trust company at $20 per share; and a participation certificate for $2,073.60 in the unliquidated assets of the old trust company. These items make up the balance for distribution, and in the distribution contained in the adjudication were awarded as follows:

"To Farmers Trust Company of Lancaster, creditor:

$32 participating certificate in the unliquidated assets of Farmers Trust Company of Lancaster . . . . . . . . . . . $32.00

"To Commonwealth of Pennsylvania, creditor:

Cash . . . . . . . . . . . . . . . . . . . $584.50

Participating certificate in the unliquidated assets of Farmers Trust Company of Lancaster of . . . . . . . . 415.79
————$1,000.29

"To Directors of the Poor for the
County of Lancaster, cred-
tor:
Cash ....................$1,169.11
Participation certificate in
the unliquidated assets of
Farmers Trust Company
of Lancaster of......... 829.74
————$1,998.85

"To Samuel M. Landis:
16 shares stock Farmers Bank and
Trust Company of Lancaster; par-
ticipating certificate in the unliq-
uidated assets of Farmers Trust
Company of Lancaster of......... $796.07"

Exceptions were filed by the State of Pennsylvania, by the Directors of the Poor of Lancaster County and by Samuel M. Landis, son and heir of decedent. The exceptions filed by the State and the directors of the poor relate to the award on account of their claims to each of them of a participation interest in the unliquidated assets of the old trust company, it being contended the claims should be paid in cash inasmuch as they are creditors of decedent. The exceptions filed by the son specifically object to the allowance of the claim of the directors of the poor for a period of more than 6 years.

We will now consider these exceptions, taking up, first the claims of the State and the directors of the poor. We are satisfied these exceptions must in principle be sustained. As creditors of the decedent they are undoubtedly entitled to be paid in cash and are not obliged to take as part payment participation interests in the unliquidated assets of the Farmers Trust Company. They may demand that the administrator sell the assets of decedent and pay creditors in cash. In this particular case, however, such a sale could not in our opinion be made at

this time except at great loss. And it seems to be agreed that such a forced sale at this time would be unwise under the circumstances. Neither the State nor the directors of the poor wish to bring about a premature sale and consequent loss. All parties in interest should be consulted and agree, if possible, when and how these assets shall be converted into money. Nothing, of course, may be awarded to the son and heir until the claims of the State and directors of the poor are paid in cash or a satisfactory equivalent. We shall, therefore, amend our adjudication, make a distribution of the money in hand and direct the administrator to hold the other assets, to wit, the stock in the Farmers Bank & Trust Company and the participation interests in the unliquidated assets of the Farmers Trust Company for a future accounting.

The exceptions filed by the State and directors of the poor are sustained as indicated.

We will now consider the exception filed by Samuel M. Landis, the son and heir of decedent. The contention of this exception is to the allowance of the claim of the directors of the poor for a period of more than 6 years. No such exception is filed to the claim of the Commonwealth. In other words, though admitting the service performed by the poor authorities in the maintenance of his mother and the correctness of the charges, the son has chosen to plead the bar of the statute of limitations against a part of the claim. This is in the face of a moral and legal liability on the part of the son to maintain his mother whenever her condition required care and treatment in an institution. The equities are all in favor of the claim and against the son. It would be unjust and inequitable if the son were permitted to enjoy any part of his mother's estate until all cost of her maintenance, care, and treatment is paid. We are not informed why this claim and the claim of the State were not earlier presented to her committee, the Farmers Trust Company. It is fair to presume it was not known to either

claimant that she had an estate liable for the cost of her maintenance. In the multiplicity of the activities of these institutions it could easily be overlooked. There was a more definite duty on the part of the committee which had charge of her person and estate to know that she was being maintained in a public institution; and that the estate it was managing and accumulating was liable to pay such maintenance as the charges periodically became due. For some undisclosed reason, over all the period of this service, it appears the committee never paid a cent and the estate was permitted to accumulate up to the time of her death. And now after death at the distribution of the estate the heir has chosen to plead the statute of limitations and objects to the full payment of just claims for the care, treatment and maintenance of his mother. Fortunately for this claimant the legislature passed the Act of May 14, 1925, P. L. 762, and included in this act is section 1016 which provides as follows:

"In all suits, claims, or demands of any poor district for maintenance and support against the real or personal estate or property rights of any pauper the statute of limitations shall not avail as a defense."

It is contended by exceptant that: (1) The Lancaster County Poor District operates under special acts and does not come within the provisions of The General Poor Relief Act of 1925, supra; (2) that the title to The General Poor Relief Act of 1925 is not sufficiently broad to cover a provision which would remove the right to plead the statute of limitations; and (3) that the administration of matters concerning weak-minded persons and lunatics is controlled by the Mental Health Act of July 11, 1923, P. L. 998.

We have no disposition to enter upon a discussion of the meaning of the word "pauper" as used in the section of the Act of 1925 above quoted. We hold that in the instant case decedent was an inmate of the Lancaster Hos-

pital, duly committed thereto, and was maintained in that institution as a pauper from the time of her admission thereto up to the time of her death by the County of Lancaster and the State of Pennsylvania. We are of the opinion that whether a normal or abnormal patient, insane or weak-minded, she was maintained as a public charge and under a broad definition of the word "pauper" she must be declared under the facts of the case to be a pauper contemplated by the Act of May 14, 1925, P. L. 762.

In Webster's New International Dictionary a "pauper" is defined as "one who receives aid from public poor funds."

See Opinion of The Justices, 124 Mass. 596, where it is stated that the word "pauper" means "persons receiving aid and assistance from the public, for themselves or their families, under the provisions made by law for the support and maintenance of the poor."

The word "pauper" is used to designate those persons whose support imposes a burden on the public treasury: Weeks et al. v. Mansfield et al., 84 Conn. 544.

The substance of the above citations is that whoever becomes a public charge and is maintained as such is a "pauper" under the law. That decedent was a public charge is not denied. In Erisman, Trustee, v. Directors of the Poor, etc., 47 Pa. 509, 513, Thompson, J., said:

"A lunatic who is a charge on the public, is charged as a *quasi* pauper, and the township or district primarily liable for maintenance, may look to any estate that may belong to such person, or to his or her relatives, who by law are answerable to reimburse. . . . It sometimes happens that a pauper charged on a district is discovered to have rights that are valuable: according to the argument carried to its legitimate results, the heirs might claim it in preference to the district, because the pauper was comfortable enough by the public munificence. Such a result is not to be thought of."

The status of decedent as a pauper is not changed by the fact that she had an undisclosed estate or any estate that later came into being. Certainly as against an heir it would be unjust and inequitable to hold otherwise.

If there is anything in the Mental Health Act of 1923, supra, not consistent with the Act of 1925, it must be held to be superseded by the latter act, which provides in section 8 as follows: "The provisions of this act shall supersede and prevail over any previous enactments, ordinances, regulations, and rules found to be inconsistent or incompatible herewith." Likewise it must be held that the above section of the Act of 1925 supersedes any provisions of all local acts relating to the Lancaster County Poor District inconsistent therewith.

It will be noted that the Act of May 14, 1925, P. L. 762, is a general comprehensive act relating to poor relief. It is a general poor relief act and the title is as follows:

"An Act Concerning poor relief and the creation and government of poor districts and the administration of the same in all counties of the Commonwealth, except in counties of the first and second class; and revising, amending, consolidating, and changing the law relating thereto."

It is contended by exceptant that the above title does not sufficiently express its purpose when it declares in section 1016 that "In all suits, claims, or demands of any poor district for maintenance and support against the real or personal estate or property rights of any pauper the statute of limitations shall not avail as a defense"; and that, therefore, as to such section it violates article III, sec. 3, of the Constitution and is void. We do not sustain this contention. We believe that, as the Act of 1925 is a general comprehensive act "Concerning poor relief and the creation and government of poor districts", in the class of counties embracing Lancaster County, its title gives sufficient notice of its purpose to

revise, amend, consolidate and change the law relating to the poor districts included in the act and all matters properly within its scope. We believe the clause contained in section 1016 of the act which declares the statute of limitations shall not avail as a defense in all claims for maintenance is within the scope of the title and is not in contravention of the constitutional provision that the title must express the purpose of the act. It has been repeatedly held that the title need not be a complete index of the contents of the act. It is sufficient if it discloses such general purpose as would induce an inquiring mind to investigate as to the general subject mentioned in the title. We are of the opinion that the title to the Act of 1925 sufficiently meets the requirements indicated in Commonwealth, ex rel., v. Snyder, 279 Pa. 234, Phillips' Estate, 295 Pa. 349, 353, and Brink v. Marsh, 53 Pa. Superior Ct. 293, 298, cited by exceptant. It is stated by Chief Justice Moschzisker in Commonwealth, ex rel., v. Snyder, supra, on page 239, as a general principle: "When the constitutionality of an act of assembly is attacked, it is the duty of every judge, —without regard to his opinion as to the necessity for the statute, or its wisdom,—to seek a construction which will support the legislative interpretation of the Constitution, and an act can never properly be declared void unless this is found to be impossible." We are of the opinion that the Act of 1925, as to section 1016, is not unconstitutional in that its subject is clearly expressed in its title.

Most of the contentions of the exceptant, however, become unimportant now that the patient, for whose care and maintenance these claims are made, is dead. They have become proper claims against her estate. If payment had been sought during her lifetime they would have been maintainable against her estate in the hands of the guardian. The jurisdiction of the court of common pleas and the authority of its committee cease at

death. Claimants now are creditors of decedent along with other creditors and with legatees and heirs.

We are also of the opinion that the Act of May 14, 1925, P. L. 762, sec. 1016, applies, and that in the instant case the statute of limitations does not prevail as a defense: Renovo Borough v. Snyder, Guardian, 13 D. & C. 211. We dismiss the exception filed by Samuel M. Landis, son and heir of decedent.

We sustain the exceptions filed by the State of Pennsylvania and the Directors of the Poor of Lancaster County; and will file an amended adjudication distributing the cash only in the hands of the administrator, directing him to retain the other assets of the estate for a future accounting as indicated in this opinion. . . .

As amended, the adjudication filed September 27, 1934, is confirmed absolutely.