### CITY OF CAMBRIDGE *vs.* CITY OF BOSTON.

Middlesex. January 17. — February 21, 1881. COLT, J., absent.

After a decision of this court that the words "any woman," in a statute relating to the settlement of paupers, applied only to unmarried women, a statute was passed enacting that the provisions of a statute which reënacted the statute so construed "shall be held to apply to married women." *Held,* that the statute, as applied to future cases, was constitutional.

CONTRACT for money expended, in December 1879, by the plaintiff, for the relief of Bridget Nolan, a pauper, whose settlement was alleged to be in the defendant city. Answer, a general denial. The case was submitted to the Superior Court, and, after judgment for the plaintiff, to this court, on appeal, on agreed facts in substance as follows:

The plaintiff is entitled to recover the amount claimed if Bridget Nolan had a settlement in Boston in December 1879 and January 1880. Upon that question the material facts are as follows: Bridget Nolan married Hugh Nolan on August 11, 1861, in Boston, and they have lived together as husband and

wife ever since. They so lived in Boston from May 1864 until June 1871, during which time neither he nor she received aid as a pauper. The husband never has had a settlement in this Commonwealth, nor did Bridget at the time of her marriage have any settlement in this Commonwealth, nor has she ever had a settlement in this Commonwealth, unless, by her residence in Boston as aforesaid, she gained a settlement in that city.

*J. W. Hammond*, for the plaintiff.

*E. P. Nettleton*, for the defendant. 1. In *Somerville* v. *Boston*, 120 Mass. 574, the court decided that the St. of 1874, *c.* 274, § 2, providing that " any woman of the age of twenty-one years, who resides in any place within this State for five years together without receiving relief as a pauper, shall thereby gain a settlement in such place," applied only to unmarried women. The St. of 1878, *c.* 190, revises the law concerning the settlement of paupers, but makes no change in the law in regard to the settlement of married women. By § 1, *cl.* 1, " a married woman shall follow and have the settlement of her husband, if he has any within the State; otherwise her own at the time of her marriage, if she then had any, shall not be lost or suspended by the marriage." And *cl.* 6 is identical with § 2 of *c.* 274 of the St. of 1874.

The St. of 1879, *c.* 242, § 2, enacts that the provisions of the St. of 1878, *c.* 190, § 1, *cl.* 6, " shall be held to apply to married women who have not a settlement derived by marriage under the provisions of the first clause, and to widows; and a settlement thereunder shall be deemed to have been gained by any unsettled woman upon the completion of the term of residence therein mentioned, although the whole or a part of the same accrues before the passage of the act." Adopting the reasoning in *Somerville* v. *Boston, ubi supra*, the term "married women " in the St. of 1879 should be held to apply to those married women who are living apart from their husbands.

2. If the construction contended for by the plaintiff is the true one, then § 2 of *c.* 242 of the St. of 1879 is unconstitutional. It is not in terms an amendment to *cl.* 6 of *c.* 190 of the St. of 1878, but is a command to the courts to hold that the provisions of the sixth clause do apply to married women,

although this court has decided that they do not. This is a direct exercise by the Legislature of a power in its nature clearly judicial, and expressly prohibited by the Declaration of Rights, art. 30. *Denny* v. *Mattoon*, 2 Allen, 361, 377. *Forster* v. *Forster*, 129 Mass. 559.

*G. Marston*, Attorney General, was permitted to file a brief as *amicus curiæ.*

LORD, J. The mode by which relief shall be granted to the suffering poor is wholly a matter of statute regulation, and this is the case whether the relief which is afforded is to be at the cost of the person or corporation which affords it, or whether it is ultimately to be borne by some other person or corporation. It is a matter wholly within the discretion of the Legislature to determine what kindred, if any, shall support indigent persons incapable of supporting themselves, and under what circumstances any city or town shall be required to furnish such support, or whether the Commonwealth shall support all or any part of such poor residing within its limits. It is competent for the Legislature, if it so choose, to say that each town and city in the Commonwealth shall be liable to support every person born within its limits who shall at any time subsequently need relief as a pauper. Instead of birth, it may make citizenship the test of such liability, and it may define citizenship. Instead of citizenship, it may make residence the test, and determine the length of residence which shall constitute such test. It is not bound to consider the question of the birth of a party, whether it be in a foreign land, in one of the States of the Union, or in any particular municipality within this Commonwealth. Undoubtedly the traditions of the Commonwealth favor the obligation to support paupers by the municipality in which they have their homes; and in all the early legislation upon the subject, paupers were to be supported by the place in which they had a settlement; and state almshouses were provided for the support of those poor who had no settlement within this Commonwealth. What, however, should constitute a settlement, was a matter to be determined by the Legislature, and so from time to time, and almost yearly, some enactment was made in relation either to the mode of acquisition of settlement or of determining derivative settlements. The modifications of such laws were

almost innumerable; sometimes involving, not only residence for a term of years, but taxation for a certain number of years during a certain term of residence, the holding of real estate, and various other qualifications, by which one could acquire a settlement in a place which would be bound to relieve him if he became a pauper; and while the word "settlement" has always carried with it the right to be supported by the municipality in which it existed, it has been greatly varied in its requirements at different times. The tendency, however, has been to simplify its requirements. The term "settlement" is retained, and is retained probably because it carries with it that obligation with which the officers of the various municipalities of the Commonwealth are familiar.

If the St. of 1879, c. 242, had provided that, if any woman twenty-one years of age, single or married, should reside continuously in a town or city for five consecutive years, receiving no support as a pauper in the mean time, and should thereafter become a pauper, she should be supported by the town in which she thus resided, if her husband had no settlement within the Commonwealth, there could have been no doubt of its meaning. The use of the word "settlement," thus applied to a married woman of foreign birth, strikes the ear unfamiliarly; but it has no other meaning than that she is there to be relieved if she fall into distress, and that the municipality shall have no remedy over.

The constitutionality of the St. of 1879, c. 242, was argued by the defendant. The precise ground of objection to its constitutionality appears to be that, by the phraseology of the statute, there is an apparent judicial construction of the St. of 1878, c. 190, and, that construction being different from the construction given by this court to the same act, that it is an assumption of judicial power by the legislative department of the government. If it be seeming, it is only seeming. It does not purport to give to the St. of 1878 a construction of itself to be valid and binding during the interval between that statute and the enactment of the present, but it is present legislation, to affect only the condition of things at the time it takes effect, as a new law changing existing law; and the use of the words "shall be held to apply" does not mean that the language of that statute shall,

without change or modification of it, be held to mean differently from what this court had declared it to mean, but simply that the provisions of that act "shall hereafter be extended to," &c., a not unusual form of language in acts which are in addition to other acts, and in extension of the powers therein granted, taking effect from the time of its passage, and not retroacting. In this view, there can be no pretence that the statute is a legislative usurpation of judicial authority.     *Judgment affirmed*