NATHANIEL J. CROSSMAN & others *vs.* NEW BEDFORD INSTITUTION FOR SAVINGS & another.

Bristol.    November 16, 1893. — February 27, 1894.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & BARKER, JJ.

*Soldier — Pauper — Reimbursement out of Pauper's Estate.*

The laws granting State aid, military aid, and soldiers' relief do not take from their beneficiaries the right to claim support and relief under the poor laws, and a discharged soldier entitled to soldiers' relief who does not claim it, but claims and receives support under the poor laws, is a pauper.

The fact that a deceased pauper was entitled to soldiers' relief, which had not been afforded him, does not bar an action by the overseers of the poor under Pub. Sts. c. 84, § 32, to recover expenses incurred for his support as a pauper.

CONTRACT, by the overseers of the poor of the city of Taunton, under Pub. Sts. c. 84, § 32, to recover from the defendant institution a portion of a sum of money deposited therein by Leander Tripp, who prior to his decease was a pauper for whose support the city of Taunton was liable. The case was submitted to the Superior Court, and, after judgment for the plaintiff, on appeal to this court, upon agreed facts, in substance as follows.

Leander Tripp was duly enlisted and mustered into the military service of the United States, November 28, 1861, as a part of the quota of Taunton, and was honorably discharged therefrom, October 13, 1862.

In 1888, being in need, he applied to the overseers of the poor of the city of New Bedford, where he resided, for aid and relief for himself and his minor children. This was granted, and the overseers of the poor of the city of Taunton, in which place he had a legal settlement, were duly notified. Thereafter until his

decease, which occurred on May 28, 1893, the overseers of the poor of New Bedford, with the concurrence of the overseers of the poor of Taunton, contributed to his support and that of his minor children.   In May, 1893, while temporarily in Freetown, he became ill, and upon application to the overseers of the poor of that town relief was there given him as a pauper until his decease, and on May 29, 1893, the overseers of the poor of the city of Taunton were duly notified.   The city of Taunton paid the expenses incurred in his support by the overseers of the poor of the city of New Bedford and of the town of Freetown continuously from October 3, 1888, until his decease.

At the time of his decease, Tripp had on deposit with the defendant institution the sum of six hundred and thirty-two dollars and three cents.   Administration was not taken out upon his estate until more than thirty days after his decease. On July 6, 1893, the plaintiffs made demand upon the defendant corporation for the sum of $517.89, being so much of the amount on deposit with it as was required to repay the expenses incurred by the city of Taunton for his support and that of his children.   Payment was refused, the defendant waiving any claim of notice.   This action was begun against the defendant corporation on July 7, 1893, and upon a petition filed by the latter under the provisions of Pub. Sts. c. 116, § 31, Willard D. Tripp, who had been appointed administrator of the estate of Leander Tripp, and who as such claimed the fund on deposit with the defendant corporation, was made a party defendant to the action.

At no time did Tripp, or any one on his behalf, make application to the mayor and aldermen of Taunton for relief, nor did the mayor and aldermen know of his destitute condition or his need of relief, nor was any relief in fact furnished by them.

*W. Clifford & O. Prescott, Jr.,* for Willard D. Tripp.

*C. A. Reed,* for the plaintiffs.

BARKER, J.   The plaintiffs show a statutory right to maintain their action if Leander Tripp at his death was a pauper chargeable to their city.   The defendants contend that, although receiving aid under the provisions made by law for the support and maintenance of the poor, he was not a pauper, because he was an honorably discharged soldier, for whose support and that

of his children by the city of Taunton compulsory provision was made by the statutes of the Commonwealth regulating the relief of soldiers and their families.

The defendants also contend that, if Tripp was a pauper, the action cannot be maintained, because it is brought in the interest of the city of Taunton, and that city ought not to be allowed to hold his estate for expenses incurred for his support as a pauper, which would not have been incurred if the city had discharged its statutory duty to support him and his family in the manner prescribed by the statutes providing for the relief of soldiers and their families.

The agreed facts show that, from some time in the year 1888 until the death of the deceased in the year 1893, he and his minor children were receiving assistance under the laws for the support and maintenance of the poor, and not under the laws providing for State aid, military aid, or soldiers' relief; and also that under the latter system of laws it was the duty of the city of Taunton to support him and his children during all the time when he was aided under the pauper laws. The compulsory statutes requiring the city so to support him and his children were the St. 1888, c. 438, § 1, in force from May 29, 1888, to May 3, 1889; St. 1889, c. 298, in force from May 3, 1889, to June 28, 1890; and St. 1890, c. 447, in force from June 28, 1890, until the time of his death. These statutes provided that he should be supported by the city of Taunton wholly or in part, as might be necessary, by relief furnished by the mayor and aldermen at his home, unless they deemed some other place right and proper, and not at an almshouse unless he chose or his condition required it. After April 24, 1893, under St. 1893, c. 237, it was the duty of the mayor and aldermen of Taunton, without any vote of the city council, to furnish the support, and upon their failure they might, upon proceedings authorized by that statute, have been made liable to a penalty.

But neither the deceased nor any one in his behalf applied to the city of Taunton or its officers for relief under the statutes mentioned, and the deceased did in fact apply to the overseers of the poor of New Bedford and of Freetown for assistance, and did receive from them assistance under the pauper laws.

The agreed facts do not show when the deposit in favor of

the deceased was made in the Institution for Savings, and we assume, in favor of the defendants, that the fact that he had such a deposit did not exempt the city of Taunton from an obligation to support him and his children under the statutes providing for soldiers' relief.

1. In our opinion, the statutes making it obligatory upon towns and cities to support discharged soldiers and their minor children by way of " soldiers' relief," so called, do not take from those whom they require to be so supported the right to claim assistance under the general laws for the support and maintenance of the poor. The pauper laws by their terms embrace not only all poor and indigent persons settled within the Commonwealth (Pub. Sts. c. 84, § 1), and all poor persons residing or found therein (Pub. Sts. c. 84, § 17), but all persons having lawful settlements in the Commonwealth when they fall into distress and stand in need of immediate relief. Pub. Sts. c. 84, § 14. To be effectual, it may in any case be essential that relief should be afforded without delay. No class of citizens should be held to be debarred from the right to ask for relief under the pauper laws, unless by explicit declaration of the Legislature, or by necessary and unavoidable implication. The fact that some other provision is made under which a citizen may be relieved is not of itself enough to take away his right to demand and receive assistance as a pauper. The statutes providing for State and military aid and soldiers' relief are so framed that a more or less considerable interval must elapse while the boards or officers charged with furnishing the relief are determining whether a case has arisen under the statute, and how the relief shall be furnished; while the pauper laws afford prompt assistance. We see no reason to hold that the statutes affording other means of relief to discharged soldiers and sailors and their families were intended to deprive the beneficiaries of the right of asking assistance as paupers if they should choose so to do. The provisions do not expressly exclude the right to take advantage of the pauper laws, and should be construed as cumulative rather than as restrictive. *Reynolds* v. *Hanrahan*, 100 Mass. 313, 316, and cases cited. The statutes providing for soldiers' relief are part of a system inaugurated as early as the year 1861, by which it was no doubt

intended that all worthy soldiers and sailors and those dependent upon them should, by the voluntary action of towns and cities, and by the grant of State aid, additional compensation, military aid, and soldiers' relief, be freed from the necessity of asking for help under the ordinary laws for the support or relief of the poor. See Sts. 1861, c. 222; 1862, cc. 66, 151, 166; 1863, cc. 79, 176, 254, § 4; 1864, cc. 47, 143; 1865, cc. 232, 251; 1866, cc. 172, 282; 1867, c. 136; 1868, cc. 107, 115; 1870, cc. 339, 388; 1871, c. 299; 1872, c. 324; 1874, c. 330; 1876, c. 219; 1877, c. 192; 1878, c. 282; 1879, cc. 1, 252, 301; 1881, c. 26; 1884, c. 34; 1885, cc. 173, 189, 204; 1886, cc. 39, 110; 1887, c. 122; 1888, c. 396, § 4, c. 438; 1889, cc. 279, 298; 1890, c. 447; 1893, cc. 237, 279. But in none of these statutes is there any provision that any soldier or sailor, or his dependents, shall not also have the benefit of the pauper laws; and in the mean time the Legislature has passed enactments recognizing the possibility that honorably discharged soldiers and sailors may become paupers. As, for instance, the twenty-eighth article of the Amendments to the Constitution, adopted by the Legislatures of 1880 and 1881, and ratified by vote of the people in 1881, providing that no such soldier or sailor shall be disqualified to vote on account of being a pauper, and St. 1884, c. 298, § 2, to the same effect. The twenty-first article of the Amendments to the Constitution, adopted by the Legislatures of 1889 and 1890, and ratified by the people in 1890, amended article twenty-eighth of the Amendments by striking out the phrases " being a pauper " and " if a pauper," and inserting in place of the former the words " receiving or having received aid from any city or town." But this amendment does not provide that soldiers so aided shall not be deemed paupers. In this connection, it is worthy of note that when it has seen occasion to make such an exemption, the Legislature has expressly declared that a person shall not be deemed to be a pauper under certain circumstances; as where he is unable to support in a public institution some one dependent upon him. See St. 1881, c. 188; Pub. Sts. c. 83, § 3.

Since Leander Tripp made no application for and did not receive the support which the city of Taunton was obliged to afford to him and his children as soldiers' relief, but did apply

for assistance to the overseers of the poor, and received support and assistance under the pauper laws up to the time of his death, he was in fact at that time a pauper within the meaning of Pub. Sts. c. 84, § 32.    See *Opinion of the Justices,* 11 Pick. 538, 540 ; *Wilson* v. *Brooks,* 14 Pick. 341 ; *Wood* v. *Burlington,* 1 Met. 489 ; *Hutchings* v. *Thompson,* 10 Cush. 238 ; *Opinion of the Justices,* 124 Mass. 596 ; *Granville* v. *Southampton,* 138 Mass. 256.    It follows that the plaintiffs can maintain the action given by that statute, unless, as the defendants contend, they are estopped by the failure of the city to support the deceased by way of soldiers' relief.

2.  We see no reason why the failure of the city to support the deceased by way of soldiers' relief should estop the plaintiffs from recovering from his estate, in the manner provided by statute, the amount expended in supporting him under the pauper laws.    Neither the city nor any of its officers refused to comply with the law.    No penalty was imposed upon any one for failure to furnish such relief, until the passage of St. 1893, c. 237, and then the penalty provided is imposed, not upon the city, but upon the mayor and aldermen.    If, as we have held, the deceased might at his option claim relief as a pauper, it is but fair that he should take the assistance which he claimed with the obligation of repayment out of his estate, and with the liability that his property should be taken for the reimbursement of the place of his settlement in the statute mode.

*Judgment for plaintiffs affirmed.*