Town of Cohasset *vs.* Town of Scituate.

Plymouth.     April 7, 8, 1941. — June 25, 1941.

Present: Field, C.J., Qua, Dolan, & Cox, JJ.

*Public Welfare. Needy Person. Dependent Child. Department of Public Welfare. Municipal Corporations, Public welfare.*

After a town's board of public welfare had given due notice to a second town of the furnishing of relief under G. L. (Ter. Ed.) c. 117 to a mother and her minor children settled in the second town and had refused her application to have the form of aid changed to that for dependent children under c. 118, as appearing in St. 1936, c. 413, § 1, and the mother had appealed to an appeal board under § 8 of said c. 118, which, more than a year after her application for such change, merely voted "to approve the appeal . . . for aid under" c. 118, the town furnishing relief was entitled to recover from the town of settlement under c. 117, § 14, the whole amount of the relief up to the date of such decision but not thereafter.

A letter by the chairman of a town's board of public welfare conceding a certain settlement therein and agreeing to pay for relief furnished under G. L. (Ter. Ed.) c. 117 by another town to the person so settled, if binding at all on the first town, was not binding thereon beyond the date of a decision of an appeal board under § 8 of c. 118, as appearing in St. 1936, c. 413, § 1, that such person was entitled to aid from the second town under said c. 118.

CONTRACT. Writ in the Second District Court of Plymouth dated August 24, 1939.

The action was heard by *Geogan*, J.

*W. S. Whiteman*, for the plaintiff.

*V. W. Marr*, Town Counsel, for the defendant.

Cox, J. This is an appeal by the plaintiff from the order of the Appellate Division for the Southern District dismissing the report of the trial judge, who denied certain requests for rulings of the plaintiff but found for it in the sum of $60. The plaintiff's claim is for $1,749.16, the amount admittedly paid by it in providing reasonable and necessary relief to one Merritt and her family who had a settlement in the defendant town.

The case was tried upon a statement of agreed facts, from which it appears that the said Merritt and her family, consisting of four minor children, moved to the plaintiff town on or about August 23, 1937, where they have continued to reside; that said family was "in needy circumstances and in need of relief," and applied therefor to the board of public welfare. On September 2, 1937, said board duly notified the defendant's board of public welfare that relief had been granted upon said application, and charged to the defendant; that said relief would be continued until the defendant removed the family, and requested its removal. The defendant's board acknowledged receipt of this notice and stated that no evidence was found that said family had a lawful settlement in the defendant town, and declined to remove it or to pay any expense for its support. The family remained in needy circumstances and in need of relief from September 2, 1937. Due demand was made for the amounts expended in furnishing relief, but nothing has been paid. Under the provisions of G. L. (Ter. Ed.) c. 116 and c. 117, "alone considered, for the furnishing of ordinary welfare aid, the plaintiff town would be entitled to reimbursement for the amount" claimed.

Prior to the date when the family removed to the plaintiff town, it had been receiving aid from the defendant, first under the "mother's aid" law, (see G. L. [Ter. Ed.] c. 118) and later under "aid to dependent children," (see G. L.

[Ter. Ed.] c. 118, as inserted by St. 1936, c. 413, and St. 1939, c. 248), and on August 11, 1937, the defendant's board wrote to the plaintiff's board that the said Merritt had been receiving aid to dependent children in Scituate, that she wished to move to Cohasset on September 1, and enclosed a copy of her "Application and First Interview for Aid to Dependent Children" to the defendant dated January 18, 1937. On October 4, 1937, said Merritt signed an "A. D. C." law form (evidently referring to said c. 118, as amended), with "the public welfare agent of the plaintiff." The plaintiff's board of public welfare refused to change the form of aid that was being rendered and continued to furnish "regular" welfare aid and relief, which it had been rendering under "previous application for general welfare (dependent) aid of September 1, 1937." For aid furnished under the provisions of c. 118, as amended, the plaintiff would be obliged to assume "practically one-sixth of . . . [the] expense," while for aid furnished under c. 117 it would bear no part of it. It was the contention of the defendant's board that the family should be aided under G. L. (Ter. Ed.) c. 118, as amended, while the plaintiff's board took the position that it rested in its discretion to determine the kind of aid that was to be furnished, that is, whether under said c. 117, or said c. 118, as amended.

The whole matter was in dispute between the boards of public welfare of the two towns until November 10, 1938, when the "State department of public welfare appeal board gave a hearing to the respective boards as a result of repeated requests of the Scituate board· upon the appeal by Mrs. Merritt dated June 3, 1938." Nothing more appears in the agreed facts as to this hearing other than that the defendant's board received the following letter, dated November 15, 1938: "At a meeting of the Board of Appeal for Aid to Dependent Children, held on November 10, 1938, it was voted to approve the appeal of Mrs. Dorothy Merritt for aid under this law." The letter was signed, "Board of Appeal for Aid to Dependent Children By: Frank W. Goodhue." In due course the plaintiff's board received notice of this vote. Under date of February 8,

1938, the chairman of the defendant's board wrote counsel for the plaintiff in reply to a letter inquiring as to the defendant's intention in the matter of reimbursement for welfare aid already furnished, and said, among other things, that "We do not question the settlement under Public Welfare and will pay your bill for such assistance. But we feel that Mrs. Merritt should be receiving Aid to Dependent Children." The amount of the judge's finding for the plaintiff represents the amounts expended by it for aid furnished in September, 1937.

G. L. (Ter. Ed.) c. 117, § 14, as inserted by St. 1937, c. 113 (see St. 1938, c. 275, and St. 1939, c. 39), provides, so far as material, that boards of public welfare in their respective towns shall provide for the immediate comfort and relief of all persons residing or found therein, having lawful settlements in other towns, in distress and standing in need of immediate relief, until removed to the towns of their lawful settlements. The expense of such relief and of their removal may be recovered in contract against the town liable therefor. Although provisions pertaining to the care of a town's own poor are to be found as early as 1639 in Colonial Laws, the first statute relative to the care of strangers by towns is found in Prov. St. 1701–2, c. 9; 1 Prov. Laws, 469. This last law appears to have been enacted for the purpose of protecting the health of the community, although it contained incidental provisions for expenses necessarily incurred.

By St. 1793, c. 59, however, "An Act providing for the relief and support, employment and removal of the poor, and for repealing all former laws made for those purposes," overseers of the poor were charged with the duty of providing immediate comfort and relief for all persons residing, "or found therein, not belonging thereto, but having lawful settlements in other towns or districts, when they fall into distress, and stand in need of immediate relief," and until they shall be removed to the places of their lawful settlements. This statute also authorized the overseers to bind out poor children whose parents were lawfully settled in and became actually chargeable to their town, as ap-

prentices or servants; "to enquire into the usage of children already legally bound out or that may be bound out by force of this Act, and to defend them from injuries." Penalties were provided for enticing children so bound out to "elope." Most of the provisions of said c. 59 were substantially reënacted in Rev. Sts. c. 46, §§ 1–26. The overseers of the poor were authorized thereby to bind out minor children of any poor person who became chargeable to their town as having a lawful settlement therein, or who was supported there in whole or in part at the charge of the State, and also other minor children who were poor and chargeable to the town "in the manner provided in the eightieth chapter." (§ 22.) By Rev. Sts. c. 80, the overseers were authorized to bind out children until certain ages, and "provision shall be made in the contract, for teaching such children to read, write and cypher, and for such other instruction, benefit and allowance, either within or at the end of the term, as the overseers may think reasonable." (See St. 1793, c. 59, § 4.)

Without attempting to trace the provisions of law relative to the support of the poor and the care of children appearing in the General Statutes, Public Statutes and the Revised Laws, it is enough to say that, in general, they retained the provisions of said St. 1793, c. 59, relative to the support of the poor and dealt progressively with the care of minors, their being placed in families or institutions, and being bound out. See Gen. Sts. c. 70, §§ 1–22, c. 111; Pub. Sts. c. 84; R. L. c. 81, c. 83, c. 155, § 4. But by St. 1918, c. 257, § 402, the provisions of said R. L. c. 155, § 4, were repealed and the binding out of children was no longer authorized.

By St. 1913, c. 763, "An Act to provide for suitably aiding mothers with dependent children" (the predecessor of G. L. [Ter. Ed.] c. 118), overseers of the poor were required, subject to the provisions of the act, to aid all mothers with dependent children under fourteen years of age, if they were fit to bring up their children, and the aid was required to be sufficient to enable the mothers to bring up the children properly in their own homes, "and such mothers and their children shall not be deemed to be paupers by reason of

receiving aid as aforesaid." (§ 1.) Other provisions required the overseers to determine the fitness of the mother and whether there were other possible means of support. The act applied to all mothers and their dependent children, whether or not they, or any of them, had a settlement in the Commonwealth, if they had resided here not less than three years. But no person could acquire a settlement or be in the process of acquiring one while receiving aid under the act. (§ 4.) The then State board of charity was given general supervision of the work done and the measures taken by the overseers of the poor, and the city or town rendering aid was to be reimbursed by the Commonwealth for one third of the amount expended. If the mother so aided had no settlement, the city or town was to be reimbursed for the total amount given, and if she had a lawful settlement in another city or town, two thirds of the amount for aid given was made recoverable in an action of contract against the city or town of settlement. (§ 6.) The provisions of this statute, with some intervening amendments not material to this discussion, were incorporated in G. L. c. 118, and c. 116, § 3.

St. 1928, c. 155, "An Act to eliminate from the relief laws the word 'pauper,'" by § 10 repealed § 3 of G. L. c. 116, which provided, among other things, that no person while receiving aid under G. L. c. 118 "shall be deemed to be a pauper by reason thereof." See *Somerville* v. *Commonwealth,* 225 Mass. 589, 592; *Treasurer & Receiver General* v. *Dedham,* 300 Mass. 238, 241–242. G. L. (Ter. Ed.) c. 118 was struck out by St. 1936, c. 413, and a new c. 118, entitled "Aid to Dependent Children," was inserted in its place. Many of the provisions of the original c. 118 are incorporated in the substituted chapter, but there are some material changes, one being found in § 5 which gives the department of public welfare general supervision of the work of the local boards, and one in § 8 which provides for an appeal to an appeal board composed of designated members of the department, of any person aggrieved by the failure of any town to render adequate aid under the chapter. Section 6 provides for reimbursement to the town "to the extent of

moneys received by the commonwealth from the federal government on account of such disbursement," and also from the Commonwealth for one third the total amount disbursed. It will be recalled that it appears in the agreed facts that, in the case at bar, if the plaintiff had furnished aid under said c. 118, as amended, it would have been required to bear about one sixth of the amount disbursed.

An examination of this legislative history shows that the only really substantial changes in the law since St. 1793, c. 59, have been in reference to children. As to them, we think it can be said that the tendency has been to give dependent children more, different and better protection and assistance. More and more emphasis has been placed upon the immediate welfare of the children with the manifest intention that they should not be deemed paupers by reason of any help given. It is true that under the provisions of G. L. (Ter. Ed.) c. 117, every town is required to relieve and support poor and indigent persons settled or found there, and the obligation of seeing to this is placed directly upon the board of public welfare. (See §§ 1, 2, 14.) It is also true that by G. L. (Ter. Ed.) c. 118, as amended, the board of public welfare in every town is required to aid a person such as the said Merritt in the case at bar. But we are unable to agree with the contention of the plaintiff that its board of public welfare had the discretion to determine whether it would grant aid under the provisions of said c. 117 or c. 118, as amended, where, as in the case at bar, an application had been made for relief under the provisions of said c. 118, as amended, if the applicant was entitled thereunder. See *Worcester* v. *Quinn*, 304 Mass. 276, 278, 279; *Waltham* v. *Newton*, 306 Mass. 59, 62. It is to be observed that said c. 118, as amended, requires that every "parent" shall be aided in properly bringing up each dependent child under the provisions of the act, and that the word "parent" includes any relative described in the paragraph defining "dependent child." No longer is the mother of the child the only one to be aided, but the "relative" may be a father, mother, grandfather, grandmother,

brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle or aunt with whom the child is living.

We are of opinion that it was intended that parents, so called, with dependent children, were to be aided and dealt with in a manner quite different from that under c. 117. It is not a mere question of food, shelter and necessities to a needy family. There is a manifest purpose to preserve the unity of the family, and to have needy children brought up in homes of their own by relatives under circumstances quite different from what would be possible, or was even thought of, under said c. 117. The intent of the Legislature appears to be to establish a mechanism by which dependent children may receive a type of public aid different in scope from and more substantial than that afforded by said c. 117, and without the necessity of accepting general welfare, so called.

· The plaintiff relies upon the case of *Soper* v. *Wheeler*, 239 Mass. 327, but we are of opinion that the case at bar is distinguishable, as are *Granville* v. *Southampton*, 138 Mass. 256, and *Crossman* v. *New Bedford Institution for Savings*, 160 Mass. 503.

The foregoing conclusions, however, do not dispose of the case. It is a fact that the plaintiff furnished aid under the provisions of said c. 117, and it is agreed that, apart from a consideration of the provisions of said c. 118, as amended, it would be entitled to be reimbursed for the amount expended. The application for aid under said c. 118 was filed on October 4, 1937. The applicant appealed on June 3, 1938, from the refusal of the plaintiff's board to change the form of aid. The appeal board did not render its decision until November 10, 1938. Section 8 of said c. 118, as inserted by St. 1936, c. 413, § 1, provides, among other things, that any person aggrieved by the failure of any town to render adequate aid under said chapter, or by the failure of the board of public welfare of the town to approve or reject an application for aid thereunder within thirty days after receiving such application, shall have a right of appeal to a board therein provided for, which shall afford the appellant an opportunity for a "fair" hearing. See now,

St. 1939, c. 248. The decision of the appeal board shall be binding upon the local board of public welfare involved and shall be complied with by such board. There is nothing in said chapter, as amended, as to the period of time to which the decision of the appeal board relates. There is nothing that fixes any precise time when aid shall be furnished. In G. L. (Ter. Ed.) c. 118A, inserted by St. 1936, c. 436, entitled "Adequate Assistance to Certain Aged Citizens," it is provided in § 1 that financial assistance granted thereunder shall be given from the "date of application therefor." It is not uncommon in the case of appeals to the courts or administrative boards for the Legislature to make express provisions as to the status of the order or decision appealed from pending appeal.

By the express provision of said § 8 of c. 118, the decision of the appeal board is binding upon the plaintiff's board. It is unnecessary to determine the possible effect of such a decision, except in the case at bar.

The decision is about as indefinite as one could be in the circumstances. The aid to be furnished under said c. 118, as amended, "shall be sufficient to enable such parent to bring up such child or children properly . . . ." The decision, so called, of the board contains absolutely no reference to any amount, and, giving to it all the weight to which it seems entitled, it amounts to nothing more than a decision that the applicant is entitled to have her case considered as to the needs and the amount of aid to which she is entitled under the law. This being so, we are of opinion that from and after the date of that decision on November 10, 1938, the plaintiff's board was no longer authorized to furnish relief under said c. 117, and that, accordingly, the defendant is not liable for any such relief furnished after that date.

The plaintiff contends that the defendant is bound to pay the amount of its claim by reason of the letter of the chairman of its board, dated February 8, 1938, in which he said, among other things, "We do not question the settlement under Public Welfare and will pay your bill for such assistance." If we assume, without deciding, that such a

letter, signed by the chairman, is binding upon the board, and consequently binding upon the town (see *Belfast* v. *Leominster*, 1 Pick. 123, 128; *Oakham* v. *Sutton*, 13 Met. 192, 195–196; *New Bedford* v. *Taunton*, 9 Allen, 207, 210–211; *Spring* v. *Hyde Park*, 137 Mass. 554, 555), we are of opinion that in no event would any such promise bind the town beyond the date of the decision of the appeal board.

It is unnecessary to consider all the requests for rulings of the plaintiff that were denied. We are of opinion that it was error to refuse to rule that, upon the facts stated and the inferences to be drawn therefrom, the plaintiff was entitled to recover at least for aid rendered up to the time of the decision of the appeal board on November 10, 1938. Moreover, we are of opinion that, as matter of law, the plaintiff was entitled to a finding in its favor for aid furnished up to that date, as the judge was also requested to rule.

Inasmuch as the plaintiff would have been entitled to a finding in its favor if the ruling asked for and refused had been given, the order of the Appellate Division dismissing the report is reversed, the finding for the plaintiff as to amount is vacated, and judgment is to be entered for the plaintiff on the declaration for the items therein shown to have been expended for relief from September 15, 1937, to and including November 10, 1938, this last date being the latest one covering any items so appearing for which the defendant is accountable.

*So ordered.*