ATTORNEY GENERAL *vs.* BOARD OF PUBLIC WELFARE OF NORTHAMPTON.

Suffolk. April 6, 1943. — April 26, 1943.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & RONAN, JJ.

*Public Welfare. Dependent Child. Constitutional Law,* Political subdivisions, Public welfare. *Municipal Corporations,* Public welfare. *Words,* "Settlement."

Upon an appeal under G. L. c. 118, § 8, as appearing in St. 1939, c. 248, to the department of public welfare from a denial of aid respecting a dependent child by a local board of public welfare, a decision by the department that the appellant was eligible for aid need not specify the amount thereof, since the amount was not involved in the appeal.

A decision by the department of public welfare on an appeal under G. L. c. 118, § 8, as appearing in St. 1939, c. 248, that the appellant, who had applied to a local board of public welfare "for aid with respect to" a dependent child, was "eligible for aid for a dependent child," was not open to the objection that it included aid for the child's parents.

General Laws, c. 118, as amended, is not unconstitutional in that it imposes the burden of rendering aid to a dependent child upon the town where he is being brought up even though neither he nor the person having care of him has a settlement in that town and the town may not receive full reimbursement from any source for the aid rendered by it.

PETITION for a writ of mandamus, filed in the Superior Court on November 23, 1942.

The case was heard by *Brown,* J., and in this court was submitted on briefs.

*R. T. Bushnell,* Attorney General, *& R. Clapp,* Assistant Attorney General, for the petitioner.

*C. J. O'Connor,* City Solicitor, *& W. W. O'Donnell,* for the respondent.

FIELD, C.J. This is a petition brought in the Superior Court by the Attorney General against the members of the board of public welfare of the city of Northampton for a writ of mandamus to compel the respondents to comply with the decision of the department of public welfare that Pearl L. Bracelor, residing in the city of Northampton, was

eligible for aid with respect to a dependent child under the provisions of G. L. (Ter. Ed.) c. 118, § 2, as appearing in St. 1941, c. 593, § 1. The case was heard by a judge of the Superior Court on a statement of agreed facts, and at the request of the parties was reported by him without decision to this court for determination. G. L. (Ter. Ed.) c. 213, § 1A, as appearing in St. 1941, c. 180; § 1B, as appearing in St. 1939, c. 257, § 1. G. L. (Ter. Ed.) c. 231, § 111.

The following facts appear in the statement of agreed facts: "On June 29, 1942, Pearl L. Bracelor was a resident of Northampton. She had no legal settlement in the city of Northampton, her legal settlement being at that time in the city of Newton. She was the mother of a dependent child, one Joanne Bracelor. She made application to the respondents as the board of public welfare of Northampton for aid with respect to such dependent child, under the provisions of said G. L. (Ter. Ed.) c. 118, § 2. On or about July 10, 1942, the respondents as such board denied her application for such aid. Thereupon the said Pearl L. Bracelor appealed from the action of the respondents in so denying her application, to the department of public welfare of the Commonwealth under the provisions of G. L. (Ter. Ed.) c. 118, § 8. The said department of public welfare acted upon her appeal in the manner prescribed in said § 8. A hearing on the appeal was held before one M. Christine Schuster, a referee designated by the commissioner of said department, and as a result of such hearing the said referee rendered a decision on August 28, 1942, approving such appeal from the date of its filing, July 10, 1942, and deciding that the appellant is eligible for aid for a dependent child. The decision of the referee was approved by the commissioner of public welfare, as appears from a copy of such decision which it is agreed is a true copy, and which is annexed to the petition in this case. The respondents, as the said board of public welfare of Northampton, were duly notified of the aforesaid decision on September 3, 1942, but notwithstanding, the respondents have failed to comply with such decision and now refuse to comply with it."

General Laws (Ter. Ed.) c. 118, § 2, as appearing in St.

1941, c. 593, § 1, provides: "In every town the board of public welfare, subject to the supervision of the department [the department of public welfare, G. L. (Ter. Ed.) c. 118, § 1, as appearing in St. 1939, c. 487] and in compliance with the rules and regulations adopted by the department pursuant to the provisions of this chapter, shall aid every parent in properly bringing up, in his or her own home, each dependent child if such parent is fit to bring up such child, but no aid shall be granted under this chapter for or on account of any child unless (1) such child has resided in the commonwealth one year immediately preceding the application for such aid, or (2) such child was born within the commonwealth within one year immediately preceding such application, if its mother has resided in the commonwealth for one year immediately preceding the birth." General Laws (Ter. Ed.) c. 118, § 6, as appearing in St. 1941, c. 405, provides as follows: "In respect to all sums disbursed for aid under this chapter, the town disbursing the same shall submit, on forms established by the department, statements of sums so disbursed by said town and, if such expenditure has been approved by the department, shall be reimbursed by the commonwealth, to the extent of the moneys received by it from the federal government on account of such disbursements, under the provisions of the federal social security act, as amended, and also for one third of the total amount disbursed." General Laws (Ter. Ed.) c. 118, § 8, as appearing in St. 1939, c. 248, provides, in case of the "failure of any town to render adequate aid under this chapter," for an appeal to the State department of public welfare and for a hearing thereon to be "conducted by a referee designated by the commissioner." This section provides that the "decision of the referee, when approved by the commissioner, shall be the decision of the department and shall be final and binding upon the local board of public welfare involved and shall be complied with by such local board."

It is conceded by the parties that the requirement of residence of the child "in the commonwealth one year immediately preceding the application for such aid" is met in

the present case. No contention is made that the statutory provisions with respect to appeal were not strictly followed.

There is no merit in the suggestion of the respondents that the "decision of the referee as approved by the . . . commissioner is ambiguous in that no amount of aid for the dependent child is specified." The appeal to the State department of public welfare related to the "matter of denial of aid by the local board of public welfare." G. L. (Ter. Ed.) c. 118, § 8, as appearing in St. 1939, c. 248. No question of the amount of aid to be rendered was presented by the appeal. That matter was to be determined by the local board of public welfare in accordance with pertinent statutes and rules and regulations of the State department of public welfare, and subject to appeal to that department. The decision that the applicant for aid was eligible for aid for a dependent child constituted the subject matter of the appeal and is not open to the objection that it is "ambiguous." Such a decision was treated as effective in *Cohasset* v. *Scituate*, 309 Mass. 402, 410, though it amounted "to nothing more than a decision that the applicant is entitled to have her case considered as to the needs and the amount of aid to which she is entitled under the law." Nor is the decision of the referee approved by the commissioner open to the objection, suggested by the respondents, that it included aid for the parents of the dependent child. The application to the local board of public welfare, which was the basis of the appeal, was made by the mother of the child "with respect to such dependent child," and the decision on appeal was that the applicant was eligible for aid for a dependent child. There is no basis for an implication that such aid is to be furnished to the mother for any purpose other than the purpose of bringing up the child in her home.

Though the respondents make the suggestions already referred to, they state that the "only question raised by the respondents is: 'Is it within the power of the Legislature under the provisions of Article IV, Sec. 36 of the Constitution of Massachusetts to compel the city of Northamp-

ton to support at public expense, a person or persons who have no legal settlement in said city without providing for reimbursement from the city wherever said persons have a legal settlement?'" The respondents contend that this question should be answered in the negative. The section of the Constitution referred to obviously is Constitution, c. 1, § 1, art. 4, which contains a broad grant of legislative power to the General Court.

The question argued requires an answer only so far as is necessary for the decision of the present case. It is enough to say that the governing statutes, in so far as they required the city of Northampton to render aid to the present applicant for aid with respect to her dependent child, in accordance with the decision of the referee approved by the commissioner, are not beyond the constitutional power of the Legislature, even though neither such dependent child nor either of her parents had a legal settlement in that city.

The support of poor persons is a public purpose for which money may be raised by taxation. The general subject is dealt with in G. L. (Ter. Ed.) c. 117, and acts in amendment thereof and in addition thereto. See also c. 116. Rendering aid to dependent children, as defined in the statutes relating to such aid, falls within the same field of governmental action, though G. L. (Ter. Ed.) c. 118 and acts in amendment thereof and in addition thereto provide a distinctly different statutory system for rendering aid to dependent children from the general statutory system for support of the poor. As was said in *Cohasset* v. *Scituate*, 309 Mass. 402, 409, where the two systems and their legislative history were discussed: "We are of opinion that it was intended that parents, so called, with dependent children, were to be aided and dealt with in a manner quite different from that under c. 117. . . . The intent of the Legislature appears to be to establish a mechanism by which dependent children may receive a type of public aid different in scope from and more substantial than that afforded by said c. 117, and without the necessity of accepting general welfare, so called."

The Legislature has a wide discretion under the Consti-

tution to determine the extent to which public burdens shall be borne directly by the Commonwealth or imposed upon the several cities and towns, and, if so imposed, the manner in which these burdens shall be distributed among the cities and towns, so long, at least, as such burdens are imposed without unreasonable discrimination. *Attorney General* v. *Williams,* 174 Mass. 476, 481. *Hodgdon* v. *Haverhill,* 193 Mass. 406, 410–411. *Horrigan* v. *Mayor of Pittsfield,* 298 Mass. 492, 499–500, and cases cited.

The statutory method of distributing the burden of supporting the poor under the general provisions therefor (G. L. [Ter. Ed.] c. 117, as amended) is based upon the legal settlements of such poor persons. The duty of furnishing such support is by statute imposed ultimately upon the city or town within the Commonwealth in which the poor person has a legal settlement, but, if such poor person has no legal settlement within the Commonwealth, upon the Commonwealth. G. L. (Ter. Ed.) c. 117, §§ 1, 14, 18, as amended. Cities and towns, however, are required to provide for the "immediate comfort and relief of all persons residing or found therein, having lawful settlements in other towns [including cities, G. L. (Ter. Ed.) c. 4, § 7, Thirty-fourth], in distress and standing in need of immediate relief, until removed to the towns of their lawful settlements," but provision is made for the recovery, from the town liable therefor, of the "expense of such relief and of their removal." G. L. (Ter. Ed.) c. 117, § 14, as appearing in St. 1939, c. 39, § 1. There is a somewhat similar provision with respect to a town furnishing relief to persons not having lawful settlements within the Commonwealth, and recovery of such expense from the Commonwealth. G. L. (Ter. Ed.) c. 117, § 18, as appearing in St. 1941, c. 351, § 9. General Laws (Ter. Ed.) c. 116 contains detailed provisions as to what shall constitute a legal settlement, and how such a settlement may be acquired, primarily, though not exclusively, based upon residence in a town for a period of years, or derived from a person having a settlement so acquired. And this chapter also provides how a legal settlement may be lost. The concept of "legal settlement," though of long

standing, is, however, a statutory and not a constitutional concept. It is within the scope of legislative power under the Constitution to change the statutory provisions for the acquisition or loss of legal settlements. *Goshen* v. *Richmond*, 4 Allen, 458, 461. *Bridgewater* v. *Plymouth*, 97 Mass. 382, 390. *Cambridge* v. *Boston*, 130 Mass. 357, 359–360. *Bradford* v. *Worcester*, 184 Mass. 557, 561. *Cohasset* v. *Norwell*, 276 Mass. 100, 105. The use of the words "legal settlement" or their equivalent, although having the sanction of long usage, is merely a convenient method of stating, in connection with other statutory provisions, the duty of towns to support the poor. Indeed, the word "settlement" has been defined in terms of this duty, as in *Cambridge* v. *Boston*, 130 Mass. 357, 360, where it was said that the "word 'settlement' has always carried with it the right to be supported by the municipality in which it existed," though the word "has been greatly varied in its requirements at different times." But the word "settlement" or the words "legal settlement" have no fixed meaning under the Constitution. The Legislature, which may constitutionally change the meaning of these words as used in the statutes, at least prospectively, may, if it deems wise, state the duties of towns to support poor persons in terms in which the word "settlement" is not employed. However important the existence of a "settlement" of a poor person in a city or town may be under statutes using that word or its equivalent, the existence of a settlement, however defined, is of no importance in determining the constitutional power of the Legislature. The question under the Constitution is whether the Legislature has power thereunder, by the use of any form of words, to impose the duty of support of a poor person upon a particular city or town.

The answer to this question concerning constitutional power is to be found in the wide discretion of the Legislature to distribute the public burdens among the several cities and towns. This wide discretion extends to the determination of the cities and towns by which support of poor persons shall be furnished. In *Cambridge* v. *Boston*, 130 Mass. 357,

359, it was said that the "mode by which relief shall be granted to the suffering poor is wholly a matter of statute regulation, and this is the case whether the relief which is afforded is to be at the cost of the person or corporation which affords it, or whether it is ultimately to be borne by some other person or corporation. It is a matter wholly within the discretion of the Legislature to determine what kindred, if any, shall support indigent persons incapable of supporting themselves, and under what circumstances any city or town shall be required to furnish such support, or whether the Commonwealth shall support all or any part of such poor residing within its limits." In *Bradford* v. *Worcester*, 184 Mass. 557, 561, it was said that in "order to provide for those who may be in need of such charitable aid as it has been the policy of the State to require cities and towns to furnish at the public expense, it is within its power at any time to change the law relating to the settlement of paupers and make such regulations under which relief is to be given as it may deem just and expedient. And it may make either citizenship or residence or both the test. Former settlements may be saved or declared defeated and lost, and the terms under which relief is to be extended to paupers may be thereby radically changed and made more onerous." The court was there dealing with a statute fixing liability to support poor persons by the use of the word "settlement," but the principle stated is equally applicable when the statutes do not use this word. In *Treasurer & Receiver General* v. *Bourne*, 275 Mass. 313, 315, it was said that it "cannot be doubted that the Legislature has power to place upon municipalities charges for the care of persons supported at public expense." And in *Cambridge* v. *Commonwealth*, 306 Mass. 358, 361, it was said that the "right of a city to reimbursement by the Commonwealth for moneys expended for aid given to poor persons within its borders, who have no legal settlements within the Commonwealth, is created by statutes. It is not an absolute right."

In the legislation relating to rendering aid to dependent children (G. L. [Ter. Ed.] c. 118, as amended) the Legislature abandoned the concept of a "settlement" or a "legal

settlement" that was determinative of the liability of a city or town to furnish support for the poor generally. Section 1 of that chapter, as appearing in St. 1939, c. 487, contains the following definitions of words used in that chapter: "'Dependent child,' a child under the age of sixteen, or under the age of eighteen if found to be regularly attending school, who has been deprived of parental support or care by reason of the death, continued absence from home or physical or mental incapacity of a parent, and who is living with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle or aunt in a place of residence maintained by one or more of such relatives as his or their own home, whether or not they or any of them have a settlement within the commonwealth. . . . 'Parent' shall include any relative described in the paragraph of this section defining 'Dependent child,' in respect to dependent children in his or her care or custody." By § 2 of said c. 118, as appearing in St. 1941, c. 593, § 1, in "every town the board of public welfare" is required to "aid every parent in properly bringing up, in his or her own home, each dependent child" who had resided in the Commonwealth for one year or had been born in the Commonwealth within one year immediately preceding the application for aid, thus placing the initial burden of rendering such aid upon the city or town in which the parent, as defined in the statute, has "his or her own home" and wholly disregarding the matter of "legal settlement."

No provision is made for reimbursement of disbursements made by a city or town in aiding a dependent child under the provisions of G. L. (Ter. Ed.) c. 118, as amended, by the city or town in which such child or its parent has a "legal settlement." But provision is made for reimbursement by the Commonwealth "for one third of the total amount disbursed" and also for reimbursement "to the extent of the moneys received by it from the federal government on account of such disbursements." G. L. (Ter. Ed.) c. 118, § 6, as appearing in St. 1941, c. 405. It is manifest that it would be within the scope of legislative power to

impose the entire burden of rendering aid to a dependent child upon the city or town in which the "parent" of such child had "his or her own home" if provision were made for full reimbursement by the Commonwealth for disbursements by the town for that purpose. Since, however, reimbursement in excess of one third of the disbursements by the city or town is dependent upon Federal action, there is some uncertainty whether there will be full reimbursement. But in view of the wide discretion conferred upon the Legislature to distribute the public burdens among the cities and towns, the possibility that there may not be full reimbursement does not vitiate the statute. It cannot rightly be said that, irrespective of provisions for reimbursement, the Legislature is without power to impose the burden of aiding a dependent child upon the city or town in which such child is being brought up, even though neither such child nor its "parent" has a "legal settlement" in that city or town. A statute imposing such a burden is not so unreasonable, on the ground of discrimination between cities and towns or on any other ground, as to render it unconstitutional, as the cases previously cited in this opinion amply demonstrate, although none of them dealt with the precise question here involved. And the governing statute cannot be struck down for the reason that the method provided thereby for distributing the burden of aiding dependent children differs from the method provided by G. L. (Ter. Ed.) c. 117, as amended, for distributing the burden of supporting poor persons generally. It cannot rightly be said that the Legislature could not have found reasonable ground for treating the two classes of cases differently.

The decision of the State board of public welfare, that the applicant in the present case, Pearl L. Bracelor, was eligible for aid by the respondents for a dependent child, Joanne Bracelor, is not objectionable on constitutional grounds. By the terms of the governing statute the respondents are required to comply with this decision. G. L. (Ter. Ed.) c. 118, § 8, as appearing in St. 1939, c. 248. Such compliance calls for "adequate aid." See § 8. No question

of what would constitute "adequate aid" is presented by the present petition.

A writ of mandamus is to issue commanding the respondents to render adequate aid to Pearl L. Bracelor for the dependent child, Joanne Bracelor, under the provisions of G. L. (Ter. Ed.) c. 118 and acts in amendment thereof and in addition thereto.

*So ordered.*