## EDWARD S. BRADFORD *vs.* CITY OF WORCESTER.

Suffolk.    November 19, 1903. — January 6, 1904.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & BRALEY, JJ.

*Pauper*, Settlement.

Clause 7 of Pub. Sts. c. 83, § 1, providing that married women "who have not a settlement derived by marriage" may gain a settlement by residing in any place within this State for five years, refers to a marriage then existing, and does not exclude a woman who being the widow of a man with a settlement in this Commonwealth married a man without such a settlement and lived in a city of this Commonwealth for five consecutive years.

Under clause 7 of Pub. Sts. c. 83, § 1, a married woman whose husband has no settlement in this Commonwealth can gain a settlement by residing in a city of this Commonwealth for five consecutive years, although during the whole of that period her husband has been absent from the Commonwealth wandering from State to State.

CONTRACT, by the treasurer of the Commonwealth against the city of Worcester, for the support of a pauper at the Worcester Insane Hospital. Writ dated January 16, 1903.

In the Superior Court the case was presented upon an agreed statement of facts. That court gave judgment for the plaintiff; and the defendant appealed.

The agreed facts were as follows : The pauper, Charles Williams, was born in Worcester, on March 26, 1876. He was committed to the Worcester Insane Hospital on March 2, 1898, and was discharged therefrom on May 12, 1899. His parents were Henry A. Williams and Mary A. (Jackson) Williams. His father, Henry A. Williams, abandoned his wife and children in August, 1875. He never was in Worcester after that, and never at any time had a settlement within the Commonwealth. After that date he did not live with his wife, and did nothing for her support. He resided in Connecticut, and resided for five years in Washington. In 1887 he came to Amherst for a short visit, since which time his whereabouts were unknown. After Henry A. Williams abandoned his wife and children in 1875, his wife, the mother of the pauper, resided in Worcester continuously, without receiving relief as a pauper, with a single exception in November, 1886, when one of her children by her first husband, Arthur Jackson, was aided by the town of Shutesbury. Mary A. Williams, mother of the pauper, had a derivative settlement at birth in Northampton, Massachusetts. She married Arthur Jackson at Northampton, in 1869, and through this marriage acquired a settlement in Shutesbury. Jackson died in 1870, and in 1871 she married Henry A. Williams, father of the pauper.

If, upon the above facts, the pauper acquired a derivative settlement in Worcester through his mother, judgment was to be entered for the plaintiff for the amount named in the declaration. If he did not acquire a settlement thus, judgment was to be entered for the defendant.

*A. P. Rugg*, for the defendant.

*A. Lord*, for the plaintiff.

BRALEY, J. If Mary A. Williams, the mother of Charles Williams, acquired a settlement in Worcester he gained a derivative settlement through her in the defendant city, which would become liable for his support as a pauper, and this presents the question to be determined.

At the time of her marriage in 1871 to Henry A. Williams, the father of Charles Williams, she was a widow and her last legal settlement, derived from a former husband, was in the town of Shutesbury.

The first contention of the defendant is that she does not fall within the description of a married woman who has not a settlement derived by marriage under Pub. Sts. c. 83, § 1, cls. 1, 6 and 7, because her former settlement in Shutesbury is to be deemed a " settlement derived by marriage " within the meaning of the first clause, which was a re-enactment of Gen. Sts. c. 69, § 1, cl. 1, and in force at the time of her second marriage.

But these clauses are to be construed together, and clause 6 of Pub. Sts. c. 83, § 1, at the time of its original enactment in St. 1874, c. 274, § 2, was held to apply only to unmarried women. *Somerville* v. *Boston*, 120 Mass. 574. And it is said in the reasons given that " the rule that the settlement of a married woman follows that of her husband has long been the statute rule of this Commonwealth. Sts. 1789, c. 14; 1793, c. 34, § 2. It rests upon the principles of the common law, . . . it concerns the unity of the marriage relation . . . because the law will not permit the separation of husband and wife." Subsequently to this decision, St. 1879, c. 242, § 2, was passed and forms clause 7 of Pub. Sts. c. 83, § 1, the object of which was to change the law so far as it affected married women, and give them the same rights in the acquisition of a settlement as unmarried women. *Marden* v. *Boston*, 155 Mass. 359, 361.

It appears from the agreed facts that Henry A. Williams never at any time had a settlement within the Commonwealth, and there was no " settlement of her husband " which she could follow as her domicil for the purpose of relief as a pauper, and that would defeat a settlement derived from her first husband.

The purpose of the first clause was to recognize the merger of the wife by the marriage relation, and the right of the husband to fix their domicil; and if he failed to maintain it for a sufficient time to acquire a settlement which by force of law should also be that of his wife, then she should not lose her own by reason of her marriage.

The words of the seventh clause " derived by marriage " are to be read with the words " at the time of marriage " found in the first clause and to which they refer, and are to be taken in their plain sense and meaning. They relate to and mean a marriage then existing and not a former marriage which has

been dissolved by the death of the husband and no longer legally exists, the status of the wife being changed from that of a married woman to that of a widow, for whom as such provision is specially made. In other words a present marital relation is the foundation on which the right rests, and when that relation ceases the protection of the statute is extended to her as a widow. The language used in the seventh clause "married women who have not a settlement derived by marriage," in order to give her any right to relief as a pauper must therefore be held to mean a settlement derived from a living husband, whose settlement, if he had any, either at the time of marriage or subsequently acquired during coverture, becomes by statute that of his wife.

Their marriage took place in 1871, and in August, 1875, the husband and father abandoned his wife and children, and since that time he has done nothing for her or for their support. He has wandered from State to State outside the Commonwealth, being sometimes in one and sometimes in another, and in all his wanderings, covering a period of twelve years up to 1887, he is not shown to have become a citizen or made a home in any one place; and since that time "his whereabouts have been unknown." His wife continued in the home where he left her, apparently supporting her children so far as she was able, and never received any relief as a pauper except once in November, 1886.

And it is admitted that Mary A. Williams has resided in Worcester for at least five consecutive years since the passage of St. 1879, c. 242, during which time she has not received relief as a pauper, and nothing is disclosed to take the case out of the general rule that ordinarily residence is to be considered the same as domicil. *Phillips* v. *Boston*, 183 Mass. 314.

Under these conditions the defendant finally relies on the fiction of the common law that husband and wife are legally one person and wherever he may be at any time, as a matter of domiciliary law his wife is there also; and though during all this period he was physically absent from the city of Worcester, his wife even if bodily therein, must as a matter of law be held to have been with him, and as he did not live there "for five years together" she did not. *Stoughton* v. *Cambridge*, 165 Mass. 251.

No argument is necessary to make it clear that under such circumstances to deny a separate legal existence to the wife is to take a position that does not in truth reflect her domestic situation, and the Legislature well might provide for this class of cases which are by no means uncommon.

In order to provide for those who may be in need of such charitable aid as it has been the policy of the State to require cities and towns to furnish at the public expense, it is within its power at any time to change the law relating to the settlement of paupers and make such regulations under which relief is to be given as it may deem just and expedient. And it may make either citizenship or residence or both the test. Former settlements may be saved or declared defeated and lost, and the terms under which relief is to be extended to paupers may be thereby radically changed and made more onerous. *Goshen* v. *Richmond*, 4 Allen, 458. *Bridgewater* v. *Plymouth*, 97 Mass. 382, 390. *Endicott* v. *Hopkinton*, 125 Mass. 521, 522. *Worcester* v. *Springfield*, 127 Mass. 540. *Fitchburg* v. *Ashby*, 132 Mass. 495. *Dedham* v. *Milton*, 136 Mass. 424. *Worcester* v. *Great Barrington*, 140 Mass. 243, 244.

From time to time, by acts of the Legislature, a married woman in this State has been freed from many of the limitations of the common law relating to her person and property. And the rights of the husband, as they existed before the enactment of these statutes, have been greatly abridged and survive to a very limited extent. He may still be considered as the head of the family, with the right to select and fix the home, and under the criminal law is commonly to be treated as responsible for its proper management. *Commonwealth* v. *Hill*, 145 Mass. 305. *Commonwealth* v. *Walsh*, 165 Mass. 62, 65. *Harmon* v. *Old Colony Railroad*, 165 Mass. 100, 105.

The harsh injustice that may sometimes be the result of the rule that husband and wife are a legal entity has been recognized in divorce proceedings instituted by the wife, and for that purpose as well as for that of separate support and maintenance she is held to have a separate domicil. *Burtis* v. *Burtis*, 161 Mass. 508. Pub. Sts. c. 147, §§ 31–34. *Osgood* v. *Osgood*, 153 Mass. 38, 39.

Under the facts disclosed, Mary A. Williams could have in-

stituted and maintained either a suit for separate support and maintenance or for a divorce from the bonds of matrimony; and there would seem to be no sufficient reason why under our laws relating to the settlement of paupers, a married woman who has been abandoned by her husband might not have a domicil separate and distinct from his in all cases where he has no settlement in this State.

We are of opinion on the facts disclosed by this case that Mary A. Williams was obliged to follow and claim the settlement of her husband, if he had any within the State, even if she thereby lost her former settlement; but if he had none, she, by residing "in any one place within this State for five years together," gained a settlement of her own for the purpose of pauper relief. *Cambridge* v. *Boston*, 130 Mass. 357. *Marden* v. *Boston*, *ubi supra*. *Williamsburg* v. *Adams*, *ante*, 263. It follows that Mary A. Williams had a legal settlement in Worcester; and Charles Williams, her son, never having acquired a settlement of his own in this State, his settlement followed that of his mother. Pub. Sts. c. 83, § 1, cl. 2.

*Judgment affirmed.*