BETHIAH B. KENDRICK vs. MARY F. KENDRICK.
MARY F. KENDRICK vs. ALICE E. KENDRICK.

Barnstable.     November 30, 1904. — June 19, 1905.*

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, HAMMOND,
LORING, & BRALEY, JJ.

*Husband and Wife.   Marriage and Divorce.   Domicil.   Name.*

A married woman, to establish a right to a separate domicil for the purpose of
maintaining a suit for a divorce in this Commonwealth under the provisions of
R. L. c. 152, § 5, must prove affirmatively that she separated from her husband
for a justifiable cause, and if she fails to sustain the burden of proof her domicil
is held to follow that of her husband.

A decree of divorce obtained in another State is none the less valid here because
in the libel and notice the libellee was called Bertha whereas her true name was
Bethiah, if she was known by both names, and a finding that she was known by
both names is justified if it appears that she was addressed by her husband as
Bertha and in the family at least was known by both names.

TWO APPEALS from decrees of the Probate Court for the
county of Barnstable, the first dismissing a petition of Bethiah
B. Kendrick for an allowance as the widow of James S. Ken-
drick, and the second allowing a similar petition of Mary F.
Kendrick as the widow of the same James, the appeal in the
first case being taken by Mary F. Kendrick, and the appeal in
the second case being taken by Alice E. Kendrick, a daughter
of James and a legatee under his will.

The cases were heard by *Morton*, J., who found the following
facts:

" James S. Kendrick and Bethiah B. Kendrick, the petitioner
in the first case, were married at Harwich in the county of
Barnstable on January 15, 1851, and thereafterwards lived to-
gether as husband and wife in this Commonwealth until 1872
or thereabouts, when they removed from Edgartown where they
were living, to Benton Harbor in the State of Michigan. There
Mr. Kendrick engaged in business, and they resided there for
about two and a half years. He was unsuccessful in business
and came back to Edgartown, bringing his family and hiring

---

* The opinion in this case was withdrawn on an application for a rehear-
ing.   This was denied on September 5, 1905, when the case was returned
to the Reporter.

and furnishing a tenement for them. His object in coming back to Edgartown was to get into the business, if he could, in which he formerly had been engaged, which was that of a seafaring man. But he was unsuccessful, and in a few months returned to Benton Harbor, leaving his family in Edgartown. There was no evidence that he became a citizen of Edgartown at this time, and I find that he did not become domiciled there, but that his domicil remained in Benton Harbor.

" After his return to Benton Harbor he wrote to his wife and sent her money from time to time. After remaining in Benton Harbor a short time, he sold out his business and settled up his affairs there and went to Dallas in the State of Texas, where he took up his residence and went into business. There was nothing secret or underhanded about the change from Benton Harbor to Dallas. It was a *bona fide* change, undertaken in the hope of bettering his condition, and without any intention, so far as appeared, of deserting or abandoning his family. Neither, so far as appeared, was there any intention on his part to abandon or desert his family when he went back to Benton Harbor from Edgartown.

" After leaving Benton Harbor for Dallas he did not send his wife any more money, his excuse being that he needed all the money he had to start himself in business. He wrote to her that he was going to Dallas, and wrote to her once or twice after he got there. She replied and wrote several letters, to which she received no answers, and then let the correspondence drop. She remained in Edgartown until forced, for want of means and by the sale of her household goods on execution, to leave and return to her mother, which she did. After remaining with her mother a short time, she came with her daughter to Boston, where she has since lived.

" I find, if it is competent, that after Kendrick went to Dallas, with the exception of small sums sent occasionally to the daughters, he did nothing towards the support of his wife and family. They supported themselves as they were able, by needlework. There was contradictory evidence admitted *de bene* as to whether Kendrick ever requested his wife to come to Michigan after his return to Benton Harbor, or to Dallas, after he went there. I find, if competent, that he did not. But according to her depo-

sition, which was read in evidence, Bethiah B. Kendrick testified, and I so find, that she did not want to go back to Michigan, though there was nothing to show that she told her husband so, or that he knew it. It did not appear whether she would have been willing to go to Dallas, if requested by him to come.

" I find that Kendrick acquired and had a *bona fide* domicil in Dallas from the time that he went there in 1875 until his removal to Yarmouth in this Commonwealth in 1893. In 1884 he filed a petition for a divorce from his wife in the District Court for the county of Dallas in Texas. The petition was under oath, and alleged among other things that his wife had abandoned him without any cause, and had remained absent from him with the intention of never living with him again and refused to live with him. There was some testimony, consisting of declarations of Kendrick, tending to show that this was so. What the actual facts were, if competent, I am unable to determine.

" The District Court in which the proceedings were instituted was a court of record and had jurisdiction in matters of divorce, and the proceedings were in all respects conformable to the laws of Texas. The service was by publication, and the wife had no knowledge of the pendency of the proceedings, and no notice except the constructive notice furnished by the publication of the citation. Service of the citation as ordered was duly returned, and after due hearing, a divorce from the bonds of matrimony was granted to the husband, on the ground of desertion. The wife was informed, at least as early as 1886 or 1887, of the divorce, and so far as appears, never has assented to the divorce or questioned until now its validity.

" In the petition and the citation, the wife's name was given as Bertha B. Kendrick, her real name being Bethiah B. Kendrick. But it appeared, and I find as a fact, if competent, that she was addressed as Bertha by her husband and that she was known by that name to some extent, though it did not appear that she was so known outside the family. I also find that the court had before it a copy of the marriage certificate in which the name of the respondent was given as Bethiah, that no fraud or imposition was practised upon it in respect to the name of the respondent, and that the person from whom the court intended to grant the divorce was the petitioner Bethiah B. Kendrick.

I also find that, if there was any error in the name, it did not appear that any one was misled, or, taking all the circumstances into account, would have been misled by it.

" James S. Kendrick was married to the petitioner Mary F. Kendrick July 25, 1894, at South Yarmouth, in this State, and lived with her until he died. No question was raised as to the amount or propriety of the allowance, if she was the widow.

" The above constitute all the material facts, and upon them counsel for Bethiah B. Kendrick and Alice E. Kendrick asked me to rule and find that the Texas divorce was invalid, and that Bethiah B. Kendrick was the widow. I refused so to rule, and ruled and found that the divorce was valid and that Mary F. Kendrick was the widow, and ordered the decrees of the Probate Court to be affirmed."

The justice reported the cases for determination by the full court. If his ruling was right, the decrees of the Probate Court were to be affirmed ; otherwise, such orders and decrees were to be made as to the full court should seem meet.

The case was argued at the bar in November, 1904, before *Knowlton*, C. J., *Morton, Barker, Hammond*, & *Loring*, JJ., and afterwards was submitted on briefs to all the justices.

*G. A. King*, for Bethiah B. Kendrick and Alice E. Kendrick.

*C. C. Paine*, for Mary F. Kendrick.

LORING, J. The appellants contend that the decree of divorce obtained by the deceased in Texas in 1884 is void for lack of jurisdiction. Their first ground in support of this contention is stated by their counsel to be that the domicil of the wife at the time of the divorce was in Massachusetts, and she might have obtained a divorce in Massachusetts from her husband at the time when he obtained a divorce from her in Texas.

The single justice found that Bethiah and her husband were married in Massachusetts in 1851 and lived in this State as husband and wife until 1872, when they moved to Benton Harbor in the State of Michigan ; that they lived there for two years and a half, and both became domiciled there ; that on the expiration of this two years and a half they came back together to Edgartown, Massachusetts, temporarily, in search of work for the husband, but their domicil remained in Benton Harbor ; that after a few months the husband returned to Benton Harbor, leaving

his family in Massachusetts, and after remaining a short time in Benton Harbor sold out his business there and went to Texas, where he took up his residence and went into business; that the move to Texas was " a *bona fide* change, undertaken in the hope of bettering his condition, and without any intention, so far as appeared, of deserting or abandoning his family. Neither, so far as appeared, was there any intention on his part to abandon or desert his family when he went back to Benton Harbor from Edgartown. After leaving Benton Harbor for Dallas he did not send his wife any more money, his excuse being that he needed all the money he had to start himself in business. He wrote to her that he was going to Dallas, and wrote to her once or twice after he got there. She replied and wrote several letters, to which she received no answers, and then let the correspondence drop. She remained in Edgartown until forced, for want of means and by the sale of her household goods on execution, to leave and return to her mother, which she did. After remaining with her mother a short time, she came with her daughter to Boston, where she has since lived. I find, if it is competent, that after Kendrick went to Dallas, with the exception of small sums sent occasionally to the daughters, he did nothing towards the support of his wife and family. They supported themselves as they were able, by needlework. There was contradictory evidence admitted *de bene* as to whether Kendrick ever requested his wife to come to Michigan after his return to Benton Harbor, or to Dallas, after he went there. I find, if competent, that he did not. But according to her deposition, which was read in evidence, Bethiah B. Kendrick testified, and I so find, that she did not want to go back to Michigan, though there was nothing to show that she told her husband so, or that he knew it. It did not appear whether she would have been willing to go to Dallas, if requested by him to come. I find that Kendrick acquired and had·a *bona fide* domicil·in Dallas from the time that he went there in 1875 until his removal to Yarmouth in this State in 1893. In 1884 he filed a petition for divorce from his wife in the District Court for the county of Dallas in Texas. The petition was under oath, and alleged among other things that his wife had abandoned him without any cause, and had remained absent from him with the intention of never living

with him again and refused to live with him.    There was some testimony, consisting of declarations of Kendrick, tending to show that this was so.    What the actual facts were, if competent, I am unable to determine."

To establish a right to a separate domicil for the purpose of divorce under R. L. c. 152, § 5, or otherwise, the burden is on the wife to prove a *delictum* by the husband.    In this case the wife had to prove that her husband deserted her and not she her husband.    This the wife failed to do.    For the purposes of this case, therefore, her domicil must be taken to have followed that of her husband, and was in Texas at the date of the divorce granted to her husband.    See *Loker* v. *Gerald*, 157 Mass. 42; *Burtis* v. *Burtis*, 161 Mass. 508.

The second ground of the appellants in support of their contention that the Texas court had no jurisdiction is that the name of the wife was Bethiah and in the libel for divorce and notice she is called Bertha.    The judge who heard the petition found "that she was addressed as Bertha by her husband and that she was known by that name to some extent, though it did not appear that she was so known outside the family.    I also find that the court had before it a copy of the marriage certificate in which the name of the respondent was given as Bethiah, that no fraud or imposition was practised upon it in respect to the name of the respondent, and that the person from whom the court intended to grant the divorce was the petitioner Bethiah B. Kendrick.    I also find that, if there was any error in the name, it did not appear that any one was misled, or, taking all the circumstances into account, would have been misled by it."

We interpret the qualification with which the first finding ends to mean that the plaintiff did not introduce direct evidence that Bethiah was known as Bertha outside the family, and not to mean that she was not so known outside the family.    The finding therefore is a finding that, in the family at least, she was known by both names.

We are of opinion that this is a finding that she was known by both names within the rule applied in *Commonwealth* v. *Gale*, 11 Gray, 320; *Gifford* v. *Rockett*, 121 Mass. 431; *Gillespie* v. *Rogers*, 146 Mass. 610; *Commonwealth* v. *Seeley*, 167 Mass. 163. See in this connection *State* v. *Dresser*, 54 Maine, 569.

*Decrees of Probate Court affirmed.*