CARRIE E. CLARK *vs.* FREDERICK H. CLARK.

Suffolk.    January 15, 1906. — March 5, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & SHELDON, JJ.

*Marriage and Divorce.    Domicil.    Words,* "Lives."

If after a husband has committed adultery his wife, deceived by his false statements
and having no knowledge of his adultery, continues to live with him until she
discovers the truth, when she ceases to cohabit with him, and on his again committing adultery leaves him permanently, there is no condonation of the earlier
adultery, which still remains as a cause for divorce.

If after a husband has committed adultery his wife, relying wholly or in part on false statements made by him, condones his offence upon his implied promise to be faithful to her thereafter, and afterwards the husband again commits adultery, the wife may withdraw her condonation and maintain a libel for divorce founded on the earlier adultery.

Under R. L. c. 152, § 4, a divorce cannot be granted in this Commonwealth for a cause which occurred in another State when the husband and wife were living together in that State, except where the libellant has lived in this Commonwealth for the five years or three years last preceding the libel as provided in § 5 of the same chapter.

In R. L. c. 152, § 6, providing that, with a certain exception, "libels for divorce shall be filed, heard and determined in the Superior Court held for the county in which one of the parties lives," *semble*, that the word "lives" is equivalent to "has a domicil."

A wife who leaves her husband in another State for a justifiable cause may establish a separate domicil in this Commonwealth for the purpose of maintaining a libel for divorce within the requirement of R. L. c. 152, § 6, that the libel shall be filed in the Superior Court held for the county in which one of the parties lives.

KNOWLTON, C. J.    This is a libel for divorce, brought by a wife against her husband on the ground of adultery.  At the time of their marriage in June, 1898, both parties were residents of Massachusetts, where the libellant previously had lived with her parents in Boston.   After their marriage they continued to live in different places in Massachusetts for about five years, until July, 1903, when they went to Pennsylvania, where they remained for a short time at Williamsport, and afterwards went to Scranton in the same State, and resided there until October, 1904.   In that month they went to Poughkeepsie, New York, and lived together there until December 15, 1904, when the libellant, with her two children, returned to her father's house in Boston, where she has since remained.   This libel having been brought in the Superior Court in Suffolk County, the libellee appeared, and filed a plea to the jurisdiction.   The sole question presented by the bill of exceptions arises upon the ruling of the judge in favor of the libellee on this plea.

The evidence would have warranted a finding that the libellee committed adultery while he was living with his wife in Massachusetts, and that she knew nothing of it, although he contracted a venereal disease, about which he made false statements, such that she misunderstood his condition.   There also was evidence that, while living in Scranton, he again contracted such a disease, in July, 1904, of which he subsequently was cured, and that after-

wards, in December, 1904, in Poughkeepsie, he again committed adultery. There was testimony that the libellant was young and inexperienced, and believed the false statements made by her husband in regard to his condition. She testified that her first information of the truth came from a lady friend late in 1904. From the time of receiving this information she ceased to cohabit with him, and has had nothing to do with him since her discovery of his adultery in December, 1904. On this evidence the judge might have found that she had no knowledge of his adultery until she received this information, and that she did not condone it at any time, or he might have found that, relying either altogether or in part upon his false statements, she condoned his earlier offence upon his implied promise to be faithful to her thereafter, and on discovery of his later transgression withdrew her condonation. *Clark* v. *Clark,* 97 Mass. 331. *Robbins* v. *Robbins,* 100 Mass. 150. *Sewall* v. *Sewall,* 122 Mass. 156. *Smith* v. *Smith,* 167 Mass. 87. The husband's adultery, committed in Massachusetts, therefore may be relied upon as a cause for divorce, as well as his later offences committed in Pennsylvania and New York; but the offences committed in Pennsylvania and New York cannot be relied upon in this suit in Massachusetts, because neither of the parties was living in this State at the time of their commission. R. L. c. 152, § 4. Under this section, the parties having lived together in this Commonwealth, a divorce may be decreed for any cause that occurred here, unless there is some general principle of law that deprives the court of jurisdiction.

Under § 6 of this chapter, the libel must be filed, heard and determined in the county in which one of the parties lives, with an exception immaterial to this case. We assume that the word "lives" in this section is equivalent to "has a domicil." Before bringing this suit the libellant had left her husband in Poughkeepsie, and had taken up her residence with her father in Boston. If, by reason of the marital wrongs inflicted upon her, she had a right to establish a domicil apart from her husband's, she was living in Boston within the meaning of the statute, and the court has jurisdiction of the case.

We are of opinion that she had this right. The latest discussion of this subject in our reports is in the case of *Burtis* v.

*Burtis*, 161 Mass. 508, which did not decide the precise question now before us, because it was not necessary to decide it, but which invoked principles, as the foundation of the decision, that are equally applicable to the present case. In the opinion is this language : " The American doctrine that a wife may have a separate domicil from her husband when she seeks a divorce on account of a wrong inflicted upon her is therefore well established, but the precise limits of it have never been settled by actual adjudication in this Commonwealth. In some of the cases there are statements which imply that, from the time of a delictum which would justify the wife in leaving her husband, she should be treated as a person who has a right to fix her own domicil, and the husband should not be permitted to assert this fiction of law against her. It may be argued with much force, that, if she proves the wrong as she alleges it, she thereby establishes a right to be emancipated from her husband from the time of the commission of the wrongful act, and a right to be free from the thraldom of this theory of law, and to claim a domicil for herself according to the fact as shown by her personal residence. If § 5 of Pub. Sts. c. 146, applies to a libel brought by a wife as well as to a libel brought by a husband, it seems to recognize the right of a wife to acquire a new domicil if the husband does that which entitles her to a divorce." We are of opinion that this is a correct statement of the law. The Supreme Court of the United States, in *Cheever* v. *Wilson*, 9 Wall. 108, 123, speaks as follows: " It is insisted that Cheever [the husband] never resided in Indiana ; that the domicil of the husband is the wife's, and that she cannot have a different one from his. The converse of the latter proposition is so well settled that it would be idle to discuss it. The rule is that she may acquire a separate domicil whenever it is necessary or proper that she should do so. The right springs from the necessity for its exercise, and endures as long as the necessity continues. The proceeding for a divorce may be instituted where the wife has her domicil." This opinion is of great weight, not only because of the high standing of that court, but also from the fact that it is the final arbiter between contending parties, on the question in any case, whether the decree of divorce granted in one State is valid to affect rights of property in another State, under the Constitution of the United

States, art. 4, § 1, which declares that "full faith and credit shall be given in each State to the public acts, records, and judicial proceedings of every other State."

Every State has jurisdiction to decree a divorce for a proper cause in favor of its own citizens, for the purpose of determining and establishing the *status* of the citizen, even though the other party to the marriage is a non-resident, over whom no jurisdiction can be obtained to render a judgment *in personam.* R. L. c. 152, § 5. *Franklin* v. *Franklin,* 154 Mass. 515. *Loker* v. *Gerald,* 157 Mass. 42. *Pennoyer* v. *Neff,* 95 U. S. 714, 734. For the determination of the *status* the divorce takes effect as a judgment *in rem.* Necessarily, such a judgment, to be effective for the citizen obtaining it, must be effective against the absent husband or wife. The *status* of one involves the *status* of the other. See *Adams* v. *Adams,* 154 Mass. 290, 295 ; *Andrews* v. *Andrews,* 176 Mass. 92, 95. If then there is complete jurisdiction to determine the *status* of the domiciled citizen asking for an adjudication of his rights, the common question as to the validity of the judgment, as against the absent party, is whether the proceedings in favor of the moving party were conducted with a due regard to the rights of the other. It is a fundamental rule in the administration of justice that one should not be deprived of that which may be valuable to him without an opportunity of being heard. From the necessity of the case it is not always possible to give notice to an absent libellee in a divorce case. Sometimes his residence cannot be discovered by the libellant. But an effort should be made to give him seasonable notice and an opportunity of being heard. If it should appear that a court proceeded to grant a divorce, because of its jurisdiction over one of the parties, without attempting to give notice of the suit to the absent party whose *status* was involved in the case, it well might be held that the judgment was invalid, as rendered in disregard of principles of common right. But if, in any way under the law, the court took reasonable measures to secure to the libellee his right to be heard, its failure to reach him should not affect the validity of the judgment as determining the *status* of the parties for all the world.

In every such case, the question whether the libellant has a domicil in the State is fundamental, and the decision of the

Supreme Court of the United States that a wife may establish for herself such a domicil, apart from her husband's, in case he has done that which entitles her to a divorce, goes far towards a settlement of the law for such conditions, if it is not absolutely conclusive upon the State courts.

The right of a married woman to acquire a settlement as a pauper, by residence apart from her husband, has been affirmed by recent legislation.  Pub. Sts. c. 83, § 1, cl. 7.  R. L. c. 80, § 1, cl. 6.  In *Bradford* v. *Worcester*, 184 Mass. 557, 561, a case in which a wife had lived apart from her husband who was absent from the State, this court said: "The harsh injustice that may sometimes be the result of the rule that husband and wife are a legal entity has been recognized in divorce proceedings instituted by the wife, and for that purpose as well as for that of separate support and maintenance she is held to have a separate domicil. . . . Under the facts disclosed, Mary A. Williams could have instituted and maintained either a suit for separate support and maintenance or for a divorce from the bonds of matrimony." See also *Ditson* v. *Ditson*, 4 R. I. 87, 107 ; *Harding* v. *Alden*, 9 Greenl. 140 ; 2 Bish. Mar., Div. & Sep. §§ 112–121 ; 9 Am. & Eng. Encyc. of Law, (2d ed.) 742, 744, and notes.

We are of opinion that the Superior Court has jurisdiction.

*Exceptions sustained.*

*L. G. Blair*, for the libellant.
No counsel appeared for the libellee.