CLAIRE M. ANDERSON *vs.* LAWRENCE M. ANDERSON.

Suffolk. April 4, 1968. — June 26, 1968.

Present: WILKINS, C.J., WHITTEMORE, KIRK, SPIEGEL, & REARDON, JJ.

*Probate Court,* Jurisdiction. *Domicil. Equity Pleading and Practice,* Venue. *Husband and Wife,* Domicil, Living apart, Antenuptial agreement. *Fraud. Contract,* Antenuptial agreement.

G. L. c. 215, § 7, did not apply so as to preclude the Probate Court of one county from taking jurisdiction of a proceeding in equity under c. 215, § 6, as appearing in St. 1963, c. 820, § 1, by a wife against her husband for cancellation of an antenuptial agreement where she had previously brought a separate support proceeding against him under c. 209, § 32, in the Probate Court of another county. [567]

Evidence in a suit in equity in a Probate Court under G. L. c. 215, § 6, as appearing in St. 1963, c. 820, § 1, by a wife against her husband for cancellation of an antenuptial agreement, that the respondent extracted the agreement from her by fraud in understating his financial worth, that under the agreement she would derive comparatively little in the event of the termination of their marriage, that throughout their marriage he referred to her as "stupid," failed to treat her well financially, and continued the fraud upon her with respect to his financial worth warranted a conclusion that he had been guilty of such a marital wrong as to justify her in leaving him and establishing a separate domicil in the county in which she brought the suit, although it was not the county in which the parties last lived together and in which he continued to maintain his domicil. [568]

Warranted findings by a judge in a suit in equity by a wife against her husband for cancellation of an antenuptial agreement executed in the office of the respondent's attorney after the respondent had told the

petitioner that outside of his salary he was '"absolutely flat," although he then was an executive of a corporation and owned stock therein which he sold four years after marriage for a large sum, justified a conclusion that the respondent had not disclosed to the petitioner the true state of his financial worth and by fraud had induced her to sign the agreement, under which she would have received only a small sum in the event of a marital breakup, payable over a five year period; and a final decree ordering the agreement cancelled was affirmed. [568–569]

PETITION filed in the Probate Court for the county of Suffolk on October 10, 1966.

The case was heard by *Wilson*, J.

*Abner Kravitz* for the respondent.

*Joseph B. Abrams* for the petitioner.

REARDON, J. The petitioner brought her suit in equity seeking cancellation of an antenuptial agreement on the ground of fraud. The respondent husband filed a plea in abatement. It was overruled, following which he filed an answer denying all allegations of the petition. He now appeals from a decree of the Probate judge overruling his plea in abatement and from the final decree which ordered the antenuptial agreement cancelled. There were two reports of material facts; one on the plea in abatement and the other on the subject matter of the petition itself. The evidence is reported.

1. We first discuss the plea in abatement. The judge's report indicates that the parties were married in Florida in January, 1963, and last lived together in Fall River, having separated in October, 1965. In May of 1966, the petitioner, described as of New Bedford, brought a separate support proceeding in the Bristol County Probate Court against the respondent, described as of Westport. In September, 1966, this proceeding was dismissed on motion of the petitioner. Since September 14, 1966, the petitioner has resided in an apartment in Boston for which she has a two year lease running through September 30, 1968.

The respondent claims that the suit was vulnerable to abatement in that jurisdiction in the Probate Court is based on residence which is equivalent to domicil and that the

Anderson *v.* Anderson.

petitioner's domicil was that of her husband which was in Bristol County. He adds that he had committed no wrong against the petitioner which would justify the establishment by her of a separate domicil. *Rolfe* v. *Walsh*, 318 Mass. 733. He further contends that the Probate Court in Bristol County has exclusive jurisdiction of the matter in that the prior action for separate support, in which the antenuptial agreement was in issue, had been brought there.

Addressing ourselves to the second contention, we are of opinion that while G. L. c. 215, § 7, confers exclusive jurisdiction of a case on that Probate Court which first takes cognizance of it, it is not applicable here in that the two actions brought by the petitioner were different. The petitioner brought her first action under G. L. c. 209, § 32, while she instituted her second one in equity under G. L. c. 215, § 6, as most recently amended in 1963.

The 1963 amendment of G. L. c. 215, § 6, bears on the respondent's first contention. This amendment conferred on the Probate Courts a new and broad equity jurisdiction concurrent with that of the Superior Court, with certain immaterial exceptions. It is apparent that the Legislature intended to make requirements for commencing and prosecuting suits in equity in both the Superior and Probate courts as closely similar as possible. Certainly nothing in G. L. c. 215 indicates a contrary intent. The equity jurisdiction of the Superior Court is established by G. L. c. 214. Section 5 of that chapter provides that the venue of suits in equity shall be the same as that of transitory actions. General Laws c. 223, § 1, lays the venue of transitory actions in the county where either party "lives or has his usual place of business." We need not here treat the question of whether "lives" as employed in G. L. c. 223, § 1, is to be equated with "domicil." See *Williams* v. *Campbell*, 3 Met. 209, 211; *Hanley* v. *Eastern S.S. Corp.* 221 Mass. 125; 44 Harv. L. Rev. 41, 44–47. Cf. G. L. c. 208, § 6; *Sampson* v. *Sampson* 223 Mass. 451, 461. It is our view that the record and transcript before us sufficiently demonstrate that the petitioner was domiciled in Boston and thus might bring her

petition in Suffolk County. While, as the respondent maintains, a wife's domicil generally follows that of her husband, she may live apart from him and establish a separate domicil "if he is guilty of such a marital wrong toward her as will justify her in living separate and apart from him." *Rolfe* v. *Walsh*, 318 Mass. 733, 735. "The cause that may justify a wife in living apart from her husband may be a lesser marital offence than one required to warrant a divorce . . . ." *Cochrane* v. *Cochrane*, 303 Mass. 467, 470–472. *Burke* v. *Burke*, 270 Mass. 449, 454. *Bradford* v. *Bradford*, 296 Mass. 187, 189–190. On the evidence which he heard it was open to the judge to find that the respondent, having extracted from his wife by fraud an antenuptial agreement from which she would derive comparatively little in the event of the termination of their marriage, throughout the marriage referred to his wife as "stupid," failed to treat her well financially, and continued the fraud upon her with respect to his material worth. There was enough disclosed in the evidence to warrant establishment by her of a separate domicil and thus she was free to bring her petition in Suffolk County.

2. Passing to the nub of the petitioner's claim that she was induced by fraud to sign the agreement, we cannot discern that the judge was plainly wrong in making the findings contained in his report. He found that it was executed in the office of the respondent's attorney in Rhode Island prior to the marriage and at a time when the respondent held executive offices in a corporation in which he owned one third of the capital stock. This he sold in 1967 for the sum of $700,000, yet he told her before the execution of the agreement that outside of his salary he was "absolutely flat." (On the witness stand he defined "flat" as "without any assets other than my salary at the time.") The petitioner first learned of his stock interest after he sold it. The judge could have found, as he did, that the petitioner would have married her husband had there been no prenuptial agreement, that she signed it at his insistence, that she believed him, and that she would not have signed it if her husband

had disclosed to her the true state of his financial worth. The agreement which she did sign would have given her only $25,000 in the event of a marital breakup, to be paid over a five year period. The classic elements of deceit could have been found by the judge and we see no reason to disturb his findings.

*Decrees affirmed.*