SAMUEL GREEN & another[1] *vs.* COMMISSIONER OF
CORPORATIONS & TAXATION.

Worcester.   September 21, 1973. — December 13, 1973.

Present:  TAURO, C.J., REARDON, QUIRICO, BRAUCHER,
& HENNESSEY, JJ.

*Domicil. Husband and Wife,* Domicil. *Taxation,* Income tax. *Equity
Jurisdiction,* Declaratory relief. *Words,* "Inhabitant."

While the remedies provided in G. L. c. 62, §§ 43-46, are stated in § 48 to
be exclusive, a court of equity might, as a discretionary matter, enter-
tain a bill for declaratory relief to declare void an assessment by the
Commissioner of Corporations and Taxation of an additional income
tax allegedly incurred by a wife who realized a capital gain after she
married a Massachusetts domiciliary but before she moved from her
home in New Hampshire to live with her new husband in Massachusetts.
[390]
A New Hampshire woman, who married a Massachusetts man but con-
tinued to live in New Hampshire for several months before moving to
live with him in Massachusetts, did not become an "inhabitant" of the
Commonwealth until she moved here, and a capital gain she realized
while still living in New Hampshire was not taxable income under G. L.
c. 62, § 5 (c). [390-395]

BILL IN EQUITY filed in the Superior Court on March 29,
1971.

The suit was reported by *Chmielinski, J.*

*Gerald E. Shugrue* for the taxpayers.

*Robert H. Quinn,* Attorney General, *Walter H. Mayo, III,*
Assistant Attorney General, & *Edward D. Kalman,* Deputy
Assistant Attorney General, for the Commissioner of Cor-
porations & Taxation, submitted a brief.

BRAUCHER, J.  A Massachusetts man marries a New
Hampshire woman, and she moves to Massachusetts about

---

[1]Lea Green, his wife.

five months later. Do our income tax laws treat her as having her domicil here before she moves? We hold that they do not, and hence we do not consider the constitutional questions that might arise if they did.

The plaintiff taxpayers brought a bill for declaratory relief, and the parties filed a statement of agreed facts amounting to a case stated. A judge of the Superior Court reported the case without decision, and the case was transferred to this court from the Appeals Court pursuant to G. L. c. 211A, § 10 (A). We summarize the agreed facts.

Samuel Green of Worcester married Lea Green of Manchester, New Hampshire, on August 15, 1965. By agreement they lived apart in their previous homes until she wound up her business. Mrs. Green was president and the owner of half the stock of a corporation and took an active part in its business. About January 18, 1966, she sold the stock and received a capital gain of $25,600.72, and about January 27, 1966, she moved to Worcester to live with her husband. In 1967 the Greens filed a joint resident individual income tax return for 1966, but did not report the capital gain. The Commissioner of Corporations and Taxation (commissioner) assessed an additional tax by reason of income received by Mrs. Green in 1966 before she moved to Worcester. The parties agree that the sole issue is whether Mrs. Green's domicil for tax purposes became that of her husband before she moved to Massachusetts about January 27, 1966.

1. The remedies provided in G. L. c. 62, §§ 43-46, as amended, though declared to be "exclusive" in § 48, do not prevent courts of equity, as a discretionary matter, from entertaining bills for declaratory relief under G. L. c. 231A in matters which affect or control issues which may be raised as of right by proceedings under §§ 43-46. *Stow* v. *Commissioner of Corps. & Taxn.* 336 Mass. 337, 339 (1957), and cases cited. Cf. *Massachusetts Mut. Life Ins. Co.* v. *Commissioner of Corps. & Taxn.* 363 Mass. 685, 688-689 (1973). But compare *Sears, Roebuck & Co.* v. *Somerville,* 363 Mass. 756, 757-759 (1973).

2. For the year 1966 income "received by any inhabitant of

the commonwealth," including "net capital gain," was to be taxed. G. L. (Ter. Ed.) c. 62, § 5; G. L. c. 62, § 5 (c), as appearing in St. 1957, c. 540, § 1; St. 1966, c. 698, § 76. By G. L. (Ter. Ed.) c. 62, § 25, every individual "who while an inhabitant of the commonwealth" received taxable income was subject to the tax. By G. L. c. 62, § 22, as appearing in St. 1939, c. 486, § 2, every "individual inhabitant of the commonwealth" whose annual income from all sources exceeded $2,000 was to make an annnual return. Section 22, as appearing in St. 1957, c. 435, § 2, permitted a husband and wife to make "a single return jointly of income taxes under this chapter."

We held long ago that the income made subject to tax by G. L. c. 62, § 5, was that received by persons who were inhabitants of the Commonwealth "at the time of receipt." *Kennedy* v. *Commissioner of Corps. & Taxn.* 256 Mass. 426, 430 (1926). See *District of Columbia* v. *Davis,* 371 F. 2d 964, 968 (D. C. Cir. 1967). To be an "inhabitant" of the Commonwealth within the meaning of the tax statute is equivalent to being domiciled therein. *Ness* v. *Commissioner of Corps. & Taxn.* 279 Mass. 369, 373 (1932), and cases cited. See G. L. c. 62, § 61 (c) inserted by St. 1966, c. 698, §§ 25, 87, for taxable years after 1966. Accepting those premises, the commissioner contends that the income received by Mrs. Green while she lived in New Hampshire was subject to Massachusetts tax by virtue of an established common law rule "that a wife's domicile, absent some marital wrong committed by her husband, follows that of her husband," citing *Anderson* v. *Anderson,* 354 Mass. 565, 568 (1968), *Rolfe* v. *Walsh,* 318 Mass. 733 (1945), and *Bradford* v. *Worcester,* 184 Mass. 557 (1904).

"At common law a married woman had no capacity to acquire a domicil of choice and was assigned that of her husband by operation of law." Restatement 2d: Conflict of Laws, § 21, comment a (1971). There were at least two reasons for the rule. First, "the very being or legal existence of the woman is suspended during the marriage, or at least is incorporated and consolidated into that of the husband."

Green *v.* Commissioner of Corporations & Taxation.

1 Blackstone, Commentaries (Cooley's 3d. rev. ed.) *442 (1884). Second, it is desirable that the interests of husband and wife be governed by the same law. The first became obsolete with the coming in of the married women's property acts beginning in 1842. See *Nolin* v. *Pearson,* 191 Mass. 283, 284-285 (1906); *Diaz* v. *Eli Lilly & Co. ante,* 153, 155-156 (1973). G. L. c. 209, §§ 1-13, as amended. The second may have some continuing vitality.

At an early date we accepted this common law rule in sustaining jurisdiction to divorce: "The wife could not acquire a domicile separate from her husband's, and although they lived apart, she still followed his domicile." *Greene* v. *Greene,* 11 Pick. 410, 415 (1831). As Chief Justice Shaw soon pointed out, however, "The good sense of the thing seems to be . . . that it shall not be considered in law, that the change of domicile of the husband draws after it the domicile of the wife to another State, so as to oust the courts of this State of their jurisdiction, and deprive the injured wife of the protection of the laws of this commonwealth and of her right to a divorce." *Harteau* v. *Harteau,* 14 Pick 181, 186 (1833). Since then we have often upheld jurisdiction to divorce based on the common law rule,[2] but have also upheld jurisdiction to divorce at the separate domicil of an innocent wife, living apart for good cause.[3] We have recognized throughout that it is a "legal fiction" that the domicil of the wife follows that of the husband, and we have permitted an innocent husband residing elsewhere to maintain a libel for divorce on the basis of the wife's separate domicil here. *Watkins* v. *Watkins,* 135 Mass. 83, 85-86 (1883).

[2]*Hood* v. *Hood,* 11 Allen 196, 199 (1865). *Burlen* v. *Shannon,* 115 Mass. 438, 447 (1874). *Loker* v. *Gerald,* 157 Mass. 42, 45 (1892). *Kendrick* v. *Kendrick,* 188 Mass. 550, 555 (1905). Cf. *Mason* v. *Homer,* 105 Mass. 116 (1870) (effect of marriage on property of wife); *Glass* v. *Glass,* 260 Mass. 562, 565 (1927) (custody of child).

[3]*Shaw* v. *Shaw,* 98 Mass. 158, 161 (1867). *Burtis* v. *Burtis,* 161 Mass. 508, 511 (1894). *Clark* v. *Clark,* 191 Mass. 128, 133 (1906). As to recognition of out-of-State divorces in such cases, see *Perkins* v. *Perkins,* 225 Mass. 82, 85 (1916); *Dorey* v. *Dorey,* 248 Mass. 359, 361 (1924); *Corkum* v. *Clark,* 263 Mass. 378, 386 (1928). Cf. *Blackinton* v. *Blackinton,* 141 Mass. 432, 435 (1886) (separate support); *Cummington* v. *Belchertown,* 149 Mass. 223, 226-227 (1889) (annulment); *Wiley* v. *Wiley,* 328 Mass. 348, 350 (1952) (separate support); *Katz* v. *Katz,* 330 Mass. 635, 639 (1953) (separate support); *Anderson* v. *Anderson,* 354 Mass. 565, 568 (1968) (cancellation of antenuptial agreement).

In a few situations the common law rule has been applied to matters other than rights between husband and wife, with results which have not stood the test of time. Under the pauper laws the rule long was that the settlement of a married woman followed that of her husband, and that she could not acquire a settlement by residence during marriage if her husband did not. *Somerville* v. *Boston,* 120 Mass. 574, 575 (1876). The statute was amended by St. 1879, c. 242, § 2, "to change the law in regard to married women, and to place them on the same footing in respect to the acquisition of a settlement as widows and unmarried women." *Marden* v. *Boston,* 155 Mass. 359, 361 (1892). See *Stoughton* v. *Cambridge,* 165 Mass. 251, 253 (1896); *Bradford* v. *Worcester,* 184 Mass. 557, 560-561 (1904); *Treasurer & Recr. Gen.* v. *Boston,* 229 Mass. 83, 86 (1918); G. L. (Ter. Ed.) c. 116, § 1, Second. In *Rolfe* v. *Walsh,* 318 Mass. 733, 735-736 (1945), we relied on the common law rule in holding that Texas registration of an automobile did not make it a trespasser on Massachusetts highways. Compare *Russell* v. *Holland,* 309 Mass. 187, 191-192 (1941). The doctrine of trespass by improper registration was later abolished. G. L. c. 90, § 9, as amended by St. 1959, c. 259. Applications of the common law rule to voting by married woman were promptly overruled by statute. See St. 1922, c. 305; 1922 House Doc. No. 1225. Compare Rep. A. G., Pub. Doc. No. 12, 1963, p. 81, with G. L. c. 51, § 1, as amended by St. 1966, c. 109. No previous application of the common law rule to Massachusetts taxes has been cited to us, and we have discovered none.

In other jurisdictions the common law rule has been subjected to more severe erosion than has been accomplished by our decisions and statutes to date. See *Williamson* v. *Osenton,* 232 U. S. 619, 625-626 (1914), where Mr. Justice Holmes refers to "the now vanishing fiction of identity of person"; *Oxley* v. *Oxley,* 159 F. 2d 10, 11 (D. C. Cir. 1946); *Napletana* v. *Hillsdale College,* 385 F. 2d 871, 873 (6th Cir. 1967); *Van Rensselaer* v. *Van Rensselaer,* 103 N. H. 23, 24-25 (1960); *Spindel* v. *Spindel,* 283 F. Supp. 797, 813

(E. D. N. Y. 1968); annotations, 75 A. L. R. 1254 (1931), 90 A. L. R. 358 (1934), and 128 A. L. R. 1422 (1940). The American Law Institute now states the rule flatly: "A wife who lives apart from her husband can acquire a separate domicil of choice." Restatement 2d: Conflict of Laws, § 21 and comment d (1971). The comment makes it clear that this power of the wife exists "even though her relations with him are wholly amicable." The weight of authority in tax cases supports this view. *Commonwealth* v. *Rutherfoord,* 160 Va. 524, 536 (1933), *McKnight* v. *Dudley,* 148 Fed. 204, 206 (6th Cir. 1906). *McCormick* v. *United States,* 57 Treas. Dec. 117, 120 (Customs Ct. 1930). *Matter of Crosby,* 85 Misc. (N. Y.) 679, 680-682 (Surr. Ct. 1914). But compare *Howland* v. *Granger,* 22 R. I. 1, 2-3 (1900).

In recent years the remains of the common law rule have come under increasing attack as based on "policy reasons" which are specious and unrealistic. See Kanowitz, Sex-Based Discrimination in American Law, II. Law and the Married Woman, 12 St. Louis L. J. 3, 15-21 (1967); Brown and others, The Equal Rights Amendment: A Constitutional Basis for Equal Rights for Women, 80 Yale L. J. 871, 941-943 (1971). As we have recognized, important changes in popular and legal thinking suggest that "ancient canards about the proper role of women" have no place in the law. See *Surabian* v. *Surabian,* 362 Mass. 342, 348-349 n. 7 (1972), quoting *Phillips* v. *Martin Marietta Corp.* 400 U. S. 542, 544-545 (1971). Recent decisions of the Supreme Court of the United States cast doubt on the constitutional validity not only of sex-based classifications but also of fictitious rules as to residence. *Reed* v. *Reed,* 404 U. S. 71 (1971). *Frontiero* v. *Richardson,* 411 U. S. 677 (1973). *Vlandis* v. *Kline,* 412 U. S. 441 (1973).

These circumstances lend little support to the present effort to extend the "vanishing fiction of identity of person" into the field of taxation. Our statutes are "to be construed as imposing taxes with respect to matters of substance and not with respect to mere matters of form." *Commissioner of Corps. & Taxn.* v. *Second Natl. Bank,* 308 Mass. 1, 6 (1941).

Taxation is "an intensely practical matter," and artificial rules from other areas of the law are to be imported into the tax laws only on the basis of "clear statutory language." *Commissioner of Corps. & Taxn.* v, *Bullard,* 313 Mass. 72, 86-87, 93 (1943). *Curtis* v. *Commissioner of Corps. & Taxn.* 340 Mass. 169, 173 (1959. See *State Tax Commn.* v. *Gray,* 340 Mass. 535, 540 (1960). The commissioner would have us read the word "inhabitant" to include a woman (but not a man) who has just married an inhabitant, without regard to any of the facts with respect to her habitation. We are not prepared to do so.

3. Since the statutes of the Commonwealth do not impose the tax claimed, we do not consider any constitutional question with respect to such a tax. A decree is to enter in the Superior Court declaring that the plaintiff Lea Green did not become an inhabitant of the Commonwealth until she moved to Massachusetts about January 27, 1966, and that the plaintiffs are therefore not liable to pay the additional 1966 tax assessed against them.

*So ordered.*