STEPHEN BOLTON *vs.* JAMES KRANTZ.[1]

No. 98-P-1416.

Suffolk. January 13, 2000. - March 14, 2002.

Present: PORADA, GREENBERG, & RAPOZA, JJ.

*Practice, Civil,* Venue. *Domicil.*

An inmate could be said to "live" at his domicile for venue purposes under G. L. c. 223, § 1, governing venue for transitory actions, even though his domicile was in a different county from his place of incarceration [194-198], and when an inmate was imprisoned in a county other than where he maintained his domicile, he could also be said to "live" in the county where he was incarcerated for venue purposes under the statute [198-199]; thus, this court vacated a judgment of dismissal based on improper venue and remanded the case for further proceedings, where it was clear that the plaintiff was incarcerated in one county when he brought suit in another, but where it remained to be determined whether the plaintiff was domiciled in the latter county at the time that he brought suit [199].

CIVIL ACTION commenced in the Superior Court Department on February 18, 1998.

The case was heard by *Hiller B. Zobel,* J., on a motion to dismiss.

*Stephen Bolton,* pro se.

*Philip W. Silva* for the defendant.

RAPOZA, J. We must determine here where a prison inmate "lives" within the meaning of G. L. c. 223, § 1, the venue statute for transitory actions.[2] We conclude that, for purpose of

---

[1]Individually and as he is unit manager for housing unit eight-one at the Massachusetts Correctional Institution at Norfolk (MCI Norfolk).

[2]General Laws c. 223, § 1, as amended by St. 1985, c. 319, provides, in pertinent part: "A transitory action shall, except as otherwise provided, if any one of the parties thereto *lives* in the commonwealth, be brought in the county where one of them *lives* or has his usual place of business" (emphasis supplied). A transitory action is one that is personal in nature and involves a cause of action based upon events that could have taken place anywhere, as

the statute, an inmate "lives" both in the county where he maintains his domicile and in the county in which he is incarcerated at the time suit is brought.

Stephen Bolton, a State prisoner serving a sentence at MCI Norfolk, brought suit in Middlesex Superior Court against James Krantz, an employee of the Massachusetts Department of Correction who managed the unit in which Bolton was housed. Bolton sought a declaratory judgment and damages, alleging that Krantz had unlawfully deprived him of certain personal property.[3]

In the complaint, Bolton asserted that his permanent legal residence was 64 Pond Street, Stoneham, in Middlesex County. Krantz moved to dismiss for improper venue pursuant to Mass. R.Civ.P. 12(b)(3), 365 Mass. 755 (1974), on the grounds that Bolton lived in Norfolk County, Krantz had his usual place of business in Norfolk County, and the events underlying the complaint occurred in Norfolk County, with no connection to Middlesex County. The motion was allowed and Bolton has appealed.

I

Our case law has not addressed the significance of the word "lives" within the meaning of G. L. c. 223, § 1. Indeed, the Supreme Judicial Court has specifically declined to decide whether "lives," as employed in the statute, is to be equated with the term "domicile." *Anderson* v. *Anderson*, 354 Mass. 565, 567 (1968). Nonetheless, the concept of "domicile" has been discussed extensively in the context of venue, especially in relation to the living arrangements of prisoners. See *Hanson* v. *Hanson*, 111 Mass. 158, 159-160 (1872) (prisoner held in Middlesex County "still living" in Norfolk County within meaning of divorce statute while he retained his domicile there; sale of his homestead had no affect on location of domicile);

opposed to a local action that could only occur in a particular place, such as a controversy over the title to land. See *Arizona Commercial Mining Co.* v. *Iron Cap Copper Co.*, 236 Mass. 185, 191-192 (1920).

[3]Bolton alleged that Krantz did not permit him to keep various items of his personal property in violation of G. L. c. 127, § 32, and inmate property regulations promulgated by the Department of Correction. He sued Krantz in both his individual and official capacities.

*Whately* v. *Hatfield*, 196 Mass. 393, 394 (1907) (compulsory detention of prisoner in house of correction does not, by itself, change his domicile). See also *Dane* v. *Registrars of Voters of Concord*, 374 Mass. 152, 165 (1978) (prisoners may " 'rebut' the presumption that by reason of their involuntary presence at the place of [their] incarceration they have retained their former domicil").

On appeal, Bolton maintains that Middlesex County is a proper venue for his civil action because he claims that his domicile is in that county.[4] A person's domicile is ordinarily the place where he has his home. *Id.* at 161-162. Moreover, it is the place that the law recognizes as defining a person's status for census purposes and voter registration. *Opinion of the Justices*, 365 Mass. 661, 663-664 (1974). A person's domicile, once acquired, is not lost until a new one is obtained. *Dane* v. *Registrars of Voters of Concord*, 374 Mass. at 162. "A new domicile 'is acquired only by a clear and honest purpose to change, which is carried into actual execution.' " *Horvitz* v. *Commissioner of Rev.*, 51 Mass. App. Ct. 386, 393 (2001) (citations omitted). Given that a person's domicile reflects his choice of abode, when an individual is imprisoned and loses the power to decide where he shall live, he does not lose his former domicile as a result of his involuntary incarceration. *Dane* v. *Registrars of Voters of Concord*, *supra* at 162-165. See also *Whately* v. *Hatfield*, 196 Mass. at 394 ("The house of correction was not [the prisoner's] residence but his place of punishment; and his temporary detention in prison in another town of the county being compulsory did not of itself work any change of domicil").

We next consider the relationship between an inmate's domicile and where he "lives" for purposes of venue. In the

---

[4]Bolton submitted an affidavit in opposition to the motion to dismiss, stating that his family home remains at the Middlesex County address; all his possessions remain there; his tax returns were sent to that address; his driver's license contains that address; his business and all his vehicles were registered at that address; and he intends to return to that address upon his release from imprisonment. The judge allowed the motion to dismiss with the marginal notation "for improper venue" without specifically ruling on Bolton's claim to be domiciled in Middlesex County. On appeal, the Commonwealth does not concede that Bolton maintains a domicile in Middlesex County.

context of divorce actions, prisoners have been treated as still living in the counties where they are domiciled, even where the county is different from the one in which they are incarcerated. In *Hanson* v. *Hanson*, the court considered the proper venue for a wife's action for divorce where the husband had been domiciled in Norfolk County but was incarcerated in Middlesex County. 111 Mass. at 160. The court concluded that the inmate husband was "still living" in Norfolk County, stating that the word "living" in the divorce statute "is equivalent to 'residing' or 'having a domicil.'" *Id.* at 159. Although the court reached that result in part to promote consistency within the statute,[5] it broadly summarized the significance of an inmate's domicile in another county:

> "It follows that the libellee, while imprisoned in the state prison in the county of Middlesex, still retained his domicil in the county of Norfolk, not only for all purposes of taxation and settlement, and the exercise of political rights in case of his pardon and release from imprisonment, *and of suing and being sued in an action at law, under the Gen. Sts. c. 123, § 1,*[6] but also for the purposes of ascertaining where a libel for divorce against him should be tried."

*Id.* at 160 (emphasis supplied). See *Sampson* v. *Sampson*, 223 Mass. 451, 461 (1916) ("Plainly the word 'lives' in R. L. c. 152, § 6, which provides that 'Libels for divorce shall be filed, heard and determined in the Superior Court held for the county in which one of the parties lives,' connotes a legal residence or domicil").

At its core, one's domicile is the place that one calls "home"

[5]The word "living" had previously been construed to mean "domicile" in another section of the statute. The court in *Hanson* concluded that the term should be construed to have the same meaning throughout the statute. See *Levanosky* v. *Levanosky*, 311 Mass. 638, 641 (1942), and cases cited ("Words denoting where one lives or has his residence appearing in our divorce statutes are ordinarily construed as signifying domicil").

[6]General Statutes c. 123, § 1 (1860), is an earlier version of the venue statute for transitory actions, G. L. c. 223, § 1, in issue here. It stated, in pertinent part, as follows: "Transitory actions, except in cases in which it is otherwise provided, if any one of the parties lives in the state, shall be brought in the county where some one of them lives or has his usual place of business."

and "[h]ome is the place where a person dwells and which is the center of his domestic, social and civil life." *Dane* v. *Registrars of Voters of Concord*, 374 Mass. at 162, quoting from Restatement (Second) Conflict of Laws § 12 (1971). But for the fact of his incarceration, an inmate would continue to live at his domicile in a county wherein he would be entitled to bring a transitory action under G. L. c. 223, § 1. Permitting an inmate to bring suit in the county of his domicile is not to facilitate some mischief on his part, but to permit him to continue to conduct his legal affairs from his legal residence.

Nonetheless, the defendant claims that Middlesex County is an inconvenient forum for this lawsuit. We recognize that venue statutes are primarily concerned with choosing a forum convenient to both litigants and witnesses, often with the purpose of protecting the defendant from the plaintiff's choice of an unfair or inconvenient forum. *Leroy* v. *Great W. United Corp.*, 443 U.S. 173, 183-184 (1979). *Hazard* v. *Wason*, 152 Mass. 268, 270 (1890). 15 Wright, Miller, & Cooper, Federal Practice and Procedure § 3801, at 3-4 (2d ed. 1986). Yet even if we were to determine that Bolton "lives" solely at his place of incarceration in Norfolk County, the defendant would be able to avoid a suit in Middlesex County only if it were commenced during the period of Bolton's imprisonment. Were the plaintiff to initiate suit in Middlesex County after his release and upon return to his domicile,[7] his actions would obviously be in conformance with the statute, although still vexatious to the defendant. No greater inconvenience is imposed upon the defendant here where the plaintiff brings an action in the county of his domicile while he is still incarcerated.[8]

It is true that the place of incarceration may be a convenient forum in the circumscribed class of cases in which a prisoner

---

[7]Assuming, of course, that the suit was not barred by either the statute of limitations or laches.

[8]As a general matter, a Massachusetts prisoner's place of incarceration gives little assurance of providing a convenient forum for a lawsuit because an inmate may be transferred at any time. See *Hastings* v. *Commissioner of Correction*, 424 Mass. 46, 49-50 (1997), citing G. L. c. 127, § 97. Therefore, any convenience that may have accompanied the choice of a particular forum based upon the relevant party's place of incarceration at the time the suit was filed may become singularly inconvenient at a later point.

complains, as here, of procedures followed by prison authorities. While it might be useful to have a rule limiting venue to the place of incarceration for this particular type of lawsuit, such a determination is a matter for consideration by the Legislature. See *Kahane* v. *Carlson*, 527 F.2d 492, 494 n.3 (2d Cir. 1975), citing *Ellingburg* v. *Connett*, 457 F.2d 240 (5th Cir. 1972) (Coleman, J., dissenting) (suggesting that Congress limit venue rules "for cases . . . which seek to affect the conduct of fixed institutions to the districts in which the institutions lie").

We conclude that an inmate can be said to "live" at his domicile for venue purposes under G. L. c. 223, § 1, even though his domicile is in a different county from his place of incarceration.

## II

Having determined that venue is proper in the county where an inmate maintains his domicile, we consider whether venue is proper in that county alone.

A person can be said, as matter of law, to live in the county where he maintains his domicile. It does not follow, though, that any place where a person in fact lives constitutes his domicile. A person's domicile is not determined merely "on the basis of where he or she lives and sleeps most of the time." *Opinion of the Justices*, 365 Mass. at 663. Thus, when a person lives in a particular location, in the sense that he merely subsists there for a while, he has not necessarily established a domicile there.

"Every person . . . can have only one domicile at a time . . . ." *Dane* v. *Registrars of Voters of Concord*, 374 Mass. at 161, quoting from *Hershkoff* v. *Registrars of Voters of Worcester*, 366 Mass. 570, 576-577 (1974). Although an inmate is capable of electing to make the place of his incarceration his new domicile, *Dane, supra* at 165, absent proof of such an intent, the inmate's involuntary incarceration creates a presumption that he intends no change in domicile. *Id.* at 171. Consequently, it is possible for an inmate to be confined at a place of incarceration without developing a domicile there.

In these circumstances, we consider whether, for purposes of G. L. c. 223, § 1, an inmate "lives" in the prison where he is

incarcerated even though the location may not constitute his domicile. We conclude that he does.

We have already determined that the requirement of G. L. c. 223, § 1, that an action "be brought in the county where one of [the parties] lives" is satisfied where suit is brought in the county where one of the parties is domiciled. But there are also circumstances, such as in the case of a prisoner, in which a person may be living in a place other than his domicile. "Thus, a person may have a residence in one place and a permanent home (i.e., a domicile) in another." *Horvitz* v. *Commissioner of Rev.*, 51 Mass. App. Ct. at 393.

An inmate, even one who retains a domicile in another county, lives his daily life in the county of his incarceration. It is there that he eats, sleeps, exercises, participates in various activities, and conducts all the day-to-day affairs of his personal life. Even though a prisoner may be transferred to another facility in a different county and is subject to release upon the expiration of his sentence, it can nonetheless be said that during the period of his commitment, he "lives" in the county where he is incarcerated.

Accordingly, we conclude that when an inmate is imprisoned in a county other than where he maintains his domicile, he can be said to "live" in the county where he is incarcerated for venue purposes under G. L. c. 223, § 1.

### III

A prison inmate "lives" both in the county where he is incarcerated at the time suit is brought, and in the county where he maintains his domicile, if different, for purpose of venue under G. L. c. 223, § 1. While it is clear that Bolton was incarcerated in Norfolk County when he brought suit in Middlesex County, it remains to be determined whether he was domiciled in Middlesex County at that time. See note 4, *supra*.

The judgment of dismissal is vacated and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*